# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

Hobby Distillers Association, Rick Morris,
Thomas O. Cowdrey III, Scott McNutt,
John Prince III

       Plaintiffs,

   v.

Alcohol and Tobacco Tax and Trade
Bureau, a bureau of the U.S. Department
of the Treasury; Department of Justice

      Defendants.

Case No. 4:23-cv-1221-O

---

**Plaintiffs' Memorandum of Law in
Support of Motion for Preliminary Injunction**

Devin Watkins (D.C. Bar # 155179)
Dan Greenberg (D.C. Bar # 9008067)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L St. NW, 7th Floor
Washington, D.C. 20005
(202) 331-1010
Devin.Watkins@cei.org
Dan.Greenberg@cei.org

GRIFFITH BARBEE PLLC
Casey Griffith (Texas Bar No. 24036687)
Casey.Griffith@griffithbarbee.com
Nicholas Kliewer (Texas Bar No. 24083315)
nick.kliewer @griffithbarbee.com
One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020| main
(214) 446-6021| fax

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ....................................................................................................... iii

Introduction ..................................................................................................................... 1

Background ....................................................................................................................... 1

Legal Standard ................................................................................................................. 4

Argument ......................................................................................................................... 4

    I.   Plaintiffs Are Likely To Prevail on the Merits ................................................... 4

        A.   The Commerce Clause Does Not Apply Here, Because There Is No Interstate
Regulatory Scheme That Justifies the Exercise of the Commerce Power ......................... 6

        B.   The Taxing Power Cannot Include the Power to Prohibit At-Home Distilling, as It Is Not
Necessary or Proper ............................................................................................................. 11

           1.   The At-Home Distilling Ban Is Not a Proper Exercise of the Taxing Power, Because
the Taxing Power Is Limited to the Collection of Taxes ........................................... 12

           2.   The At-Home Distilling Ban Is Not Appropriate, Plainly Adapted, or Really
Calculated to Effect Federal Taxation ...................................................................... 14

               i.   The At-Home Distilling Ban Is Not an Appropriate Implementation of the Federal
Tax Power, as Shown by the Taxes Successfully Levied on Home Wine
Businesses, Home Beer Businesses, and Millions of Other Home Businesses ..... 14

               ii. The At-Home Distilling Ban Is Not Really Calculated to Effect the Exercise of
Federal Taxation .................................................................................................. 16

               iii.The At-Home Distilling Ban Is Not Plainly Adapted to Federal Taxation ........... 17

    II.  Plaintiffs Will Suffer Irreparable Harm Absent A Preliminary Injunction ....................... 20

    III. A Balance of Equities Favors the Plaintiffs and Demonstrates the Public Interest Would
Be Served By Granting Injunctive Relief ........................................................................ 23

Conclusion ...................................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .................................................... 22

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021)........................................................................................... 22, 23

*California v. Texas*, 141 S. Ct. 2104 (2021) ............................................................................... 12

*Cooper v. Aaron*, 358 U.S. 1 (1958) ......................................................................................... 21

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579 (5th Cir. 2013)........... 21

*Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226 (5th Cir. 2022) .............................. 21

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................................... 22

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) .......... 23

*Gonzales v. Raich*, 545 U.S. 1 (2005)............................................................................ 7, 8, 9, 10

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ................................................................................... 5

*Heil Trailer Int'l Co. v. Kula*, 542 Fed.Appx. 329 (5th Cir. 2013) ............................................ 20

*Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981)...................... 11

*Lamprecht v. F.C.C.*, 958 F.2d 382 (D.C. Cir. 1992) ................................................................. 23

*Llewelyn v. Oakland Cnty. Prosecutor's Off.*, 402 F. Supp. 1379 (E.D. Mich. 1975)................. 23

*Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022) .............................................................. 20, 23

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)................................................................... 21

*Maryland v. Wirtz*, 392 U.S. 183 (1968)...................................................................................... 7

*McCulloch v. Maryland*, 17 U.S. 316 (1819) ......................................................... 6, 13, 14, 22

*Moore v. Brown*, 868 F.3d 398 (5th Cir. 2017) ........................................................................... 4

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856)............ 21

*N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937)............................................. 11, 14

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)............................................ 4, 12, 13

*Nat'l League of Cities v. Usery*, 426 U.S. 833 (1976) ................................................................. 7

*Nat'l Solid Waste Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446 (N.D. Tex. 2012) .......... 21

*New York v. United States*, 505 U.S. 144 (1992) ......................................................................... 5

*NFIB v. Sebelius*, 567 U.S. 519 (2012) ....................................................................................... 5

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................................... 23

*Sabri v. United States*, 541 U.S. 600 (2004) ............................................................................... 18

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019) ............................ 5

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) ............................................................................. 23

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), as revised (Nov. 25, 2015) ..................... 23

*Texas v. United States*, 945 F.3d 355 (5th Cir. 2019) ................................................................. 12

*United States v. Lopez*, 514 U.S. 549 (1995) ...................................................................... passim

*United States v. Morrison*, 529 U.S. 598 (2000) ................................................................... 5, 11

*United States v. Wrightwood Dairy Co.*, 315 U.S. 110 (1942) ................................................... 15

*VanDerStok v. Garland*, 633 F. Supp. 3d 847 (N.D. Tex. 2022) ................................................ 22

*Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130 (5th Cir. 2021) .................................... 23

*Wickard v. Filburn*, 317 U.S. 111 (1942) ................................................................................. 8, 9

*Wilkinson v. Austin*, 545 U.S. 209 (2005) ................................................................................. 22

**Statutes**

26 U.S.C. § 5173 ......................................................................................................................... 17

26 U.S.C. § 5178(a)(1)(A) ........................................................................................................... 17

26 U.S.C. § 5178(a)(1)(B) ........................................................................................................ 3, 5

26 U.S.C. § 5178(a)(2)(B) ........................................................................................................... 17

26 U.S.C. § 5178(a)(2)(C)(ii) ...................................................................................................... 17

26 U.S.C. § 5179 ......................................................................................................................... 16

26 U.S.C. § 5204 ................................................................................................................. 17

26 U.S.C. § 5207 ................................................................................................................. 17

26 U.S.C. § 5601(6) .......................................................................................................... 3, 5

**Other Authorities**

3 J. Story, *Commentaries on the Constitution of the United State* (1833) ..................................... 20

Alcohol and Tobacco Tax and Trade Bureau Form 5110.74 (last updated May 2017) ................. 4

Alcohol and Tobacco Tax and Trade Bureau, Home Distilling (last accessed Dec. 15, 2023) ...... 2

American Craft Spirits Association, *Annual Craft Spirits Economic Briefing* (December 2022).. 2

Caleb Franz, *What's good for beer should be good for bourbon. Make home distilling legal: Opinion*, Courier Journal (Aug. 29, 2022) ..................................................................... 2

Fed. R. Civ. P. 65. ................................................................................................................ 4

I.R.S., Business use of your home (last accessed Dec. 15, 2023) .............................................. 16

N. Webster, *American Dictionary of the English Language* (1828) ........................................... 18

*The Complete Joy of Home Brewing* (3rd. 2014) ..................................................................... 1

U.S. Small Business Administration Office of Advocacy, Frequently Asked Questions (Sept. 2019) .................................................................. 16

**Rules**

27 C.F.R. § 19.18 ................................................................................................................. 17

27 C.F.R. § 19.45 ................................................................................................................. 17

Revision of Distilled Spirits Plant Regulations, 76 FR 9080 (2011) .......................................... 2

**Constitutional Provisions**

U.S. Const. amend. X .......................................................................................................... 20

U.S. Const. art. I, § 8, cl. 18 .................................................................................................. 6

U.S. Const. art. VI, cl. 2 ....................................................................................................... 21

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs move this Court to preliminarily enjoin enforcement of the federal at-home distilling prohibition in 26 U.S.C. § 5601(6) and 26 U.S.C. § 5178(a)(1)(B) and implementing regulations. That injunction would protect the members of the Hobby Distillers Association and individual Plaintiffs from the enforcement of these unconstitutional statutes until this matter can be adjudicated.

## INTRODUCTION

In our constitutional system, the federal government is one of limited and enumerated powers. To prohibit a local activity, the federal government must show that the prohibition is supported by some legitimate federal interest. At-home distilling for personal consumption is banned by federal statute, but that ban rests on no legitimate federal interest. Anyone with a shed and a still on a parcel of property may distill alcohol, but only if there is no dwelling on the property: a still that is next to the home, or even a still that is miles away but on the same plot of land, is prohibited. The presence or absence of a home is irrelevant to any federal interstate regulatory scheme or system of tax collection. Whether there is a federal ban on at-home distilling or not, the states remain able to regulate the practice, and because there is no legitimate federal interest here, the states have exclusive regulatory authority.

## BACKGROUND

In the last decade, the American market for craft beer has flourished: a quarter of all beer is craft beer. 90% of today's craft beer businesses originated in someone's home before the brands they created became significant competitors with other more established ones. Charlie Papazian, *The Complete Joy of Home Brewing* (3rd. 2014). However, craft distilleries have been less successful at penetrating mass markets; distilled alcohol beverages from craft distilleries only make up 4.9% of sales by volume. American Craft Spirits Association, *Annual Craft Spirits*

1

*Economic Briefing* (December 2022). The federal ban on at-home distilling helps to explain the relatively stunted economic performance of craft distilleries, because that ban makes starting up a craft distillery much more difficult. Caleb Franz, *What's good for beer should be good for bourbon. Make home distilling legal: Opinion*, Courier Journal (Aug. 29, 2022). Many people own little or no real property beyond their own home and thus have no place they are legally allowed to distill. If we compare economic development in the craft distillery sector to climbing a ladder, this ban saws off the ladder's bottom rungs.

Prohibition, which *inter alia* banned the production of most alcoholic beverages in the United States, ended in 1933. Sometime after Prohibition ended, the federal government ended the related ban on brewing beer and making wine at home, but distilling remains prohibited today. The U.S. Alcohol and Tobacco Tax and Trade Bureau states on its website, "While individuals of legal drinking age may produce wine or beer at home for personal or family use, Federal law strictly prohibits individuals from producing distilled spirits at home." Alcohol and Tobacco Tax and Trade Bureau, *Home Distilling* (last accessed Dec. 15, 2023); *see also* Revision of Distilled Spirits Plant Regulations, 76 FR 9080 (2011) ("While Federal law allows for the limited home production of wine and beer, no such provision exists for distilled spirits."). "Within title 26 of the United States Code, section 5601 sets out criminal penalties for activities including the following. Offenses under this section are felonies that are punishable by up to 5 years in prison, a fine of up to $10,000, or both, for each offense. . . . 5601(a)(6) – Distilling on a prohibited premises. (Under 26 U.S.C. 5178(a)(1)(B), a distilled spirits plant may not be located in a residence or in sheds, yards, or enclosures connected to a residence.)." *Id.*

The statutory provisions at issue criminalize the conduct of "Any person who . . . uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled

2

spirits, or aids or assists therein, or causes or procures the same to be done, in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house (except as authorized under section 5178(a)(1)(C))." 26 U.S.C. § 5601(6). Furthermore, those provisions require that "No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat." 26 U.S.C. § 5178(a)(1)(B).

Title 26's ban extends not only to the home, but also to any shed, yard, or enclosure on the same plot of land as the home. The ban thus prevents many people whose only real property is their own home from distilling beverage alcohol at all. Making alcohol at home for fuel use is legal; nonetheless, manufacturing precisely the same product at home for beverage use is prohibited—whether or not the manufacturer (that is, the still operator) is willing and able to pay all applicable taxes, and whether or not those taxes are actually paid. It is perhaps worth reiterating that the alcohol that commercial beverage manufacturers use for beverages like wine, gin, and vodka is, chemically, no different from the alcohol for fuel use that results from home distillery. In other words, the ban on at-home distilling is not universal; rather, the ban is only operative if the purpose of distilling is the creation of an alcoholic beverage or if the product of the still is used as such. As described below, there is no enumerated or implied power in the Constitution that provides any foundation for this ban.

Plaintiff Hobby Distillers Association has worked to lift the ban on at-home distilling. App. 1. That effort has been blocked by major distilling businesses that fear competition. The other Plaintiffs are members of the Hobby Distillers Association, App. 1, who simply want to distill at home for their own personal consumption. App. at 2, 4, 7, 8. Of course, Plaintiffs intend to follow the law: if the injunction is granted, or if Plaintiffs are otherwise permitted to distill beverages at

home, they intend to pay all related taxes and comply with all related statutory obligations. App. at 2, 4, 6, 8.

Plaintiffs have asked the U.S. Alcohol and Tobacco Tax and Trade Bureau to grant a permit for at-home beverage distilling. The Bureau has responded that such a permit would not be considered, but that a permit would be considered for alcohol *fuel* production at the home of the Plaintiffs. *See also* Alcohol and Tobacco Tax and Trade Bureau Form 5110.74 (last updated May 2017) (providing an example with a still shed for the production of fuel alcohol next to a house). The Bureau's decision to consider home distillation for fuel use, but not for beverage use, further emphasizes the complete disconnection between the beverage distillery ban and the administration of federal taxation. The Plaintiffs now bring suit to end the unconstitutional ban on at-home distilling for beverage purposes.

## LEGAL STANDARD

A preliminary injunction is warranted where, as here, the movant has established (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017). *See* Fed. R. Civ. P. 65.

## ARGUMENT

## I.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Plaintiffs are likely to prevail on the merits here, because there is no evident federal power that can support the home distillery ban's constitutionality. In order for the government to justify its ban on at-home distilling, it must demonstrate one of two propositions: either that the ban rests on an enumerated Constitutional power or that the ban rests on an implied and incidental power

4

that is necessary and proper for the exercise of an enumerated Constitutional power. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 534 (2012). We argue below that the government cannot demonstrate either proposition.

"The Constitution created a Federal Government of limited powers." *New York v. United States*, 505 U.S. 144, 155 (1992) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "[T]he principle that '[t]he Constitution created a Federal Government of limited powers,' while reserving a generalized police power to the States, is deeply ingrained in our constitutional history." *Id.* at 619 n.8. A state may certainly "exercise … its police powers" by passing "bona fide health and safety measures" to regulate alcohol. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019) (internal citations omitted). However, this police power is withheld from the federal government. *United States v. Morrison*, 529 U.S. 598, 618 (2000); *United States v. Lopez*, 514 U.S. 549, 566 (1995). The powers that the Constitution did give Congress "must be read carefully to avoid creating a general federal authority akin to the police power." *NFIB v. Sebelius*, 567 U.S. 519, 536 (2012). To reiterate, the states possess and may exercise the police power, but the federal government has no such power and therefore cannot exercise it.

No enumerated constitutional power authorizes the home distillery ban. As shown below in Sections I.A. and I.B., neither the government's authority under the Commerce Clause or its authority under its taxing power can constitutionally support the home distillery ban. This is because (1) the ban, by operating locally, neither directly regulates interstate commerce nor the instrumentalities of interstate commerce, and (2) the ban does not raise any revenue. In short, the federal ban on at-home distilling, 26 U.S.C. §5178(a)(1)(B) and 26 U.S.C. § 5601(6), cannot be authorized by any enumerated power of Congress. That is, the federal government's powers under the Commerce Clause and under the taxing power cannot authorize the home distillery ban;

furthermore, there is no other enumerated power that can plausibly do so.

Nor can the related and incidental federal powers implied by the Necessary and Proper Clause, as famously explicated in *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819), justify the home distillery ban. U.S. Const. art. I, § 8, cl. 18. *McCulloch's* battery of means-ends tests demonstrate that any such justification would be unsuccessful for two reasons: first, the exercise of the Commerce Clause would require the showing of an end or objective in a way that cannot be done here; and, second, the exercise of the taxing power would require the showing of an "appropriate," "really calculated," and "plainly adapted" relation to the distillery ban in a way that cannot be done here. The exercise of an incidental federal power under the Commerce Clause can only be justified when that use derives from an exercise of an enumerated power; here, there is no such relation between the incidental power and the enumerated power. Finally, the use of the tax power to justify the ban cannot succeed, because using that power to punish those who have met their tax obligations is improper and impermissible.

## A. The Commerce Clause Does Not Apply Here, Because There Is No Interstate Regulatory Scheme That Justifies the Exercise of the Commerce Power

Congress's power to regulate interstate commerce cannot extend to the regulation of home distilling, because regulation in this area is outside the scope of both that enumerated congressional power and the implied powers that derive from it. The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power," *Lopez*, 514 U.S. at 558, and none of these three classes of regulatory activity permissibly extend to the ban on home distilling.

"First, Congress may regulate the use of the channels of interstate commerce," *id*., such as roads and rivers between states. "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce [cars, boats, and planes], or persons or things in

6

interstate commerce, even though the threat may come only from intrastate activities." *Id.* "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." *Id.* at 558-59. "Congress's regulatory authority over intrastate activities that are not themselves part of interstate commerce (including activities that have a substantial effect on interstate commerce) derives from the Necessary and Proper Clause." *Gonzales v. Raich*, 545 U.S. 1, 34 (Scalia, J., concuring).

This case does not involve channels of interstate commerce, such as roads or rivers between states, nor does it concern the instrumentalities of interstate commerce, such as cars, boats, and planes. Therefore, the only remaining claim under the Commerce Clause by the government could be that distilling at home is an activity that is not part of interstate commerce but has a substantial effect on interstate commerce, causing its regulation to be necessary and proper to an interstate regulation. The regulation of home distilleries falls outside this third category of activities that Congress may regulate under the commerce power: that is because there is no existing interstate regulatory scheme that the prohibition on at-home distilling is necessary to support.

The Court has never found "that Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities." *Maryland v. Wirtz*, 392 U.S. 183, 196 n.27 (1968), *overruled on other grounds* by *Nat'l League of Cities v. Usery*, 426 U.S. 833 (1976). What the Court has said is "that where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id.* That shows why the home-distillery ban is a constitutional failure: the home-distillery ban is categorically distinct from the regulations on activities with a substantial effect on interstate commerce that were upheld in other cases—because those previous

cases that gave judicial approval to such regulations depended on a general regulatory statute upon which those regulations rested. The general regulatory statute that is necessary to pass the Court's test here is absent: the at-home distilling ban lacks any general regulatory statute that bears the required, substantial relation to commerce.

Previous Court holdings illuminate the foundational requirement of a general regulatory scheme expressed in a statute. Consider the statutory scheme supported in *Wickard v. Filburn*, 317 U.S. 111 (1942), which the Court described more than 50 years later as "perhaps the most far reaching example of Commerce Clause authority over intrastate activity." *Lopez*, 514 U.S. at 560. "*Wickard* [] establishes that Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Raich*, 545 U.S. at 18.

In *Wickard,* the interstate regulatory scheme at issue derived from "the Agricultural Adjustment Act of 1938 as related to wheat [] to control the volume moving in interstate and foreign commerce in order to avoid surpluses and shortages and the consequent abnormally low or high wheat prices and obstructions to commerce." *Wickard*, 317 U.S. at 115. In other words, that scheme aimed to control national wheat shortages and surpluses by regulating goods moving from one state to another, a matter which is broadly under Congress's authority.

The "concern prompting inclusion of wheat grown for home consumption in the 1938 Act was that rising market prices could draw such wheat into the interstate market, resulting in lower market prices." *Raich*, 545 U.S. at 19. The substantial "effect of consumption of homegrown wheat on interstate commerce is due to the fact that it constitutes the most variable factor in the disappearance of the wheat crop." *Wickard,* 317 U.S. at 127.

8

The "wheat consumed as food varies but relatively little, and use as seed is relatively constant," while "[c]onsumption on the farm where grown appears to vary in an amount greater than 20 per cent of average production." *Id.* This variability led to the "surpluses and shortages and the consequent abnormally low or high" in the interstate market for which the statute is designed "to restrict the amount which may be produced for market." *Id.*

Congress created the local regulation in *Wickard* to reinforce its program of the interstate regulation of national wheat surpluses or shortages. Claude Wickard could participate in wheat production only so long as he was governed by the same limits as everyone else—and he could not exceed those limits, even to feed his animals.

Plaintiffs also preserve for appeal the argument that *Wickard v. Filburn* was wrongly decided, although this court lacks the authority to overrule it. In our view, *Wickard* was wrongly decided because the actions of other third-party individuals cannot be aggregated together to find a sufficient effect on interstate commerce to allow federal regulation, and so *Wickard* is inconsistent with the text's original meaning.

*Gonzales v. Raich*, 545 U.S. 1 (2005), also illuminates the nature and boundaries of constitutionally legitimate local regulation as well as the necessary statutory foundation that such regulation must rest on—this time in the context of Congress's authority to regulate medical marijuana. The Supreme Court asked if growing medical marijuana was included in a "class of activities [that are] an essential part of the larger regulatory scheme" of regulating direct interstate commerce. The Court of Appeals had found it was not, but the Supreme Court disagreed.

Congress had created a local ban on marijuana possession to support the regulatory scheme in the Drug Abuse Prevention and Control Act of 1970, which "repealed most of the earlier antidrug laws in favor of a comprehensive regime to combat the international and

9

interstate traffic in illicit drugs." *Id*. at 12. This Act contained congressional findings that:

> (4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.
> (5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

*Id.* at n. 20.

The prohibition on local possession of marijuana thus reinforced the prohibition on interstate commerce in marijuana. Therefore, the "failure to regulate that class of [local] activity would undercut the regulation of the interstate market in that commodity." *Id.* at 18. The presence of a general regulatory scheme in *Raich* (and *Wickard*) stands in sharp contrast to the absence of a general regulatory scheme here: the at-home distilling ban is unaccompanied by any regulatory statute that bears the required, substantial relation to commerce.

There is no parallel to *Wickard,* because there is no federal ceiling on the amount of distilled spirits that may enter interstate commerce. There is no parallel to *Raich,* because there is no ban on bringing distilled spirits across state lines. But more broadly, even when we consider non-party individuals who might someday like to distill alcohol at home in the way that Plaintiffs want to, there is no federal regulation of interstate commerce that home distilling would interfere with. Beer and wine share a similar regulatory scheme, but neither the home-brewing of beer nor the home fermenting of wine undercuts the nation's market in them.

Rather, the Plaintiffs' case should be understood as parallel to the circumstances of *United States v. Lopez*, 514 U.S. 549 (1995). Both the at-home distilling ban and the firearms-near-schools ban in *Lopez* operate as bans on local activity, not as regulations of interstate commerce. The attempted justifications of both measures are based on vague claims of threats to

10

national interest that are notably unclear, at best indirect, and reliant upon large assumptions with little or no factual basis. Ultimately, the logic of either ban—if upheld—would lead to a national police power under any theory the government might bring, because the logical implications of the finding that either ban is constitutional would make it difficult or impossible to posit any activity that the government could not ban. That finding would elide the "distinction between what is truly national and what is truly local." *Id.* at 568.

The bottom line: for this regulation to rest on the Commerce Clause's authority to regulate activity that is both local and non-economic, Congress would have had to provide a broader regulatory scheme that necessarily requires such intrastate regulation—and Congress has not done so. Congress has not specified why prohibiting at-home distilling would be necessary to regulate interstate commerce. Even if it had, "simply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so." *Lopez*, 514 U.S. at 557 (quoting *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 311 (1981) (Rehnquist, J., concurring in judgment)).

In short, this ban on at-home distilling lacks any foundation under the Commerce Clause. The ban is not necessary to support any regulation of the channels or instrumentalities of interstate commerce, nor of people or goods traveling in interstate commerce. Allowing Congress to prohibit what is unnecessary for any interstate regulatory framework "would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." *See N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937); *Lopez*, 514 U.S. at 567–68; *Morrison*, 529 U.S. at 617–18. Thus, the at-home distilling prohibition cannot rest on the exercise of the Commerce Clause power.

**B.  The Taxing Power Cannot Include the Power to Prohibit At-Home Distilling, as It Is**

**Not Necessary or Proper**

The ban on at-home distilling also cannot rest directly on the Taxing Power, because the ban raises no revenue. The ban lacks "the essential feature of any tax: It produces at least some revenue for the Government." *Sebelius*, 567 U.S. at 564. As Justices Thomas and Gorsuch have explained, evidence from the Founding era demonstrates that any use of the tax power necessarily requires the collection of revenue, and that this proposition derives from a "substantial line of precedent." *California v. Texas*, 141 S. Ct. 2104, 2136 (2021) (opinion of Thomas, J., joined by Gorsuch, J.); *see also Texas v. United States*, 945 F.3d 355, 390–91 (5th Cir. 2019), as revised (Dec. 20, 2019), as revised (Jan. 9, 2020), *overruled on other grounds. California v. Texas*, 141 S. Ct. 2104 (2021) (cited as persuasive, not binding precedent).

Therefore, any claim about the power to prohibit at-home distilling that rests on the taxing power must implicate the implied and incidental powers that are inherent in the Necessary and Proper Clause. But this claim also must fail—because, as shown just below, such a ban is neither necessary nor proper for the tax on distilled spirits.

**1.   The At-Home Distilling Ban Is Not a Proper Exercise of the Taxing Power, Because the Taxing Power Is Limited to the Collection of Taxes**

The Taxing Power is limited and cannot properly extend to the ban at issue on at-home distilling, so long as the excise tax on distilling alcohol is paid. As the Supreme Court has explained:

> [A]lthough the breadth of Congress's power to tax is greater than its power to regulate commerce, the taxing power does not give Congress the same degree of control over individual behavior. Once we recognize that Congress may regulate a particular decision under the Commerce Clause, the Federal Government can bring its full weight to bear. Congress may simply command individuals to do as it directs. An individual who disobeys may be subjected to criminal sanctions…
> By contrast, Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the

> Government has no power to compel or punish individuals subject to it. … [I]mposition of a tax nonetheless leaves an individual with a lawful choice to do or not do a certain act, so long as he is willing to pay a tax levied on that choice.

*Sebelius*, 567 U.S. at 573–74.

In fact, Plaintiffs are quite willing to pay the excise tax that (absent the federal ban) would be levied on at-home distilling, assuming that the government allows Plaintiffs to pay it: here, the government has blocked its own receipt of the tax revenues that it is arguably entitled to. Because the Plaintiffs are willing to pay the tax, "the Government has no power to compel or punish individuals subject to it" under the Tax Power. *Sebelius*, 567 U.S. at 573–74. Nonetheless, the federal government has chosen the forbidden route of compulsion and punishment. Criminal prohibitions would still operate to imprison Plaintiffs, whether they pay the attendant taxes or not.

If the defendants in this action take the position that the Taxing Power allows the federal government to ban anything it can tax, such advocacy would necessarily imply an astonishing and unprecedented expansion in the scope of federal power. Because the federal government can tax any good or service, the decision to shoulder the principle that the federal government can ban anything it can tax also logically implies that the federal government can ban any good or service. Indeed, that principle would allow the government to ban given actions generally unless rules prescribed by the federal government are followed. There is no limiting principle here: the caboose at the end of this long train of horribles would be a general police power to regulate all private conduct. Perhaps in anticipation of this hypothetical chain of disfavored arguments, the Court has found that federal powers under the Constitution "must be read carefully to avoid creating a general federal authority akin to the police power," *Sebelius*, 567 U.S. at 536. This rule of interpretation that has been provided by the Court ensures that federal powers are consistent with both "the letter and spirit of the constitution." *See McCulloch*, 17 U.S. at 421.

In short, the federal Tax Power, even when considered in tandem with the Necessary and Proper Clause, cannot include the power to prohibit activities that people are willing to pay the attendant taxes on. Again, were a court to discover this new federal power and allow its exercise, that choice would have astonishing implications and would presumably lead to the birth of a new and general federal police power.

### 2. The At-Home Distilling Ban Is Not Appropriate, Plainly Adapted, or Really Calculated to Effect Federal Taxation

The means chosen need not be "absolutely necessary," but they do need to be "appropriate," "plainly adapted" to the exercise of the enumerated power, and "really calculated" to effect such an exercise. *McCulloch*, 17 U.S. at 421 ("Let the end be legitimate, let it be within the scope of the constitution, and all means which are *appropriate*, which are *plainly adapted* to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."); *id.* ("But where the law is not prohibited, and is *really calculated to effect any of the objects intrusted to the government*, to undertake here to inquire into the degree of its necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground"). As shown below, the at-home distilling ban lacks the qualities that *McCulloch* requires.

### i. The At-Home Distilling Ban Is Not an Appropriate Implementation of the Federal Tax Power, as Shown by the Taxes Successfully Levied on Home Wine Businesses, Home Beer Businesses, and Millions of Other Home Businesses

To be "appropriate" under the Necessary and Proper Clause, the Supreme Court has explained that there must be an "essential" relationship between the regulation of local activities and the exercise of the enumerated federal power. Although the nature of the regulation does not have to be "absolutely necessary" or "absolutely essential"—that is, it is not required that the federal power cannot otherwise be exercised—the local activities must "have such a close and substantial relation to" the exercise of the federal power "that their control is essential or

appropriate to protect that" federal power "from burdens and obstructions." *Lopez*, 514 U.S. at 555 (quoting *Jones & Laughlin Steel Corp.*, 301 U.S. at 37). The local regulation must be an "essential part of" a direct exercise of an enumerated power "in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *United States v. Lopez*, 514 U.S. 549, 549 (1995). The Necessary and Proper Clause therefore only "extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted [enumerated federal] power." *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 119 (1942).

The distillery ban at issue here fails that test. The ban is not an "appropriate" exercise of federal taxing power, because there is no undercutting, interfering with, or obstruction of the federal power to collect taxes. In fact, other home-based businesses that manufacture alcoholic beverages pay taxes to the federal government without any such undercutting, interference, or other obstruction to revenue collection. The federal government taxes home-produced beer and wine without unusual administrative difficulties. How is it that the wine and beer industries can coexist with at-home beer brewing and at-home wine fermentation, but at-home distilling cannot coexist with its industry counterpart? The government must answer this question if it takes the position that the justification for the at-home distilling ban rests directly or indirectly on the tax power, and that question's answer is far from obvious. Nothing about the administrability of taxes on beer and wine production appears distinct from the administrability of taxes on distilled spirits.

And, of course, the universe of home businesses that have nothing to do with home brewing, home fermentation, or home distilling is many times larger. Millions of Americans have their own home-based businesses, and when those businesses face tax liabilities, they pay taxes. Somehow, other home-based businesses transcend any problems of tax administration and

collection that the home-distillery ban might be imagined to pose. According to the U.S. Small Business Administration, "The share of businesses that are homebased has remained relatively constant over the past decade, at about 50% of all firms." U.S. Small Business Administration Office of Advocacy, *Frequently Asked Questions* 3 (Sept. 2019). Nearly two-thirds of all professional, scientific, and technical services are home-based businesses. *Id.* According to the Internal Revenue Service, "Most taxpayers with home-based businesses accurately report their income and expenses while still enjoying the benefits that a home-based business can offer." I.R.S., Business use of your home (last accessed Dec. 15, 2023).

If millions of home-based businesses can be trusted to report their income and regularly do so accurately, there is no reason to single out distilling. All that such a ban accomplishes is to limit entry into the market and to cross-subsidize incumbent firms at the expense of potential competitors. The home-based businesses that are the heart of the American economy cannot properly be banned any more than the home distillers can, because those activities do not undercut, interfere with, or obstruct federal taxation.

      **ii.   The At-Home Distilling Ban Is Not Really Calculated to Effect the Exercise of Federal Taxation**

In addition to being "appropriate," the ban must be "really calculated" to effect the exercise of federal taxation. However, in this case, the other regulations on distilleries that this action does *not* challenge fully ensure that the taxes that are levied on distilleries will face no problems of administration or collection. In other words, the relevant test is whether the ban appears to be effectively designed to meet the administrative goals of tax collection, and the home distillery ban fails that test.

The textual provisions surrounding the ban consist of numerous regulations designed to ensure that any taxes owed are provided to the federal government—which means that, whether

the ban is enforced or not, the government will receive the revenue it is due. Those other provisions include a comprehensive scheme requiring registration of stills, 26 U.S.C. § 5179 (identifying the "place where such still or distilling apparatus is set up, the kind of still and its capacity, the owner thereof, his place of residence, and the purpose for which said still or distilling apparatus has been or is intended to be used"); a requirement that all such declarations must be under penalty of perjury and signed by the proprietor or their authorized representative, 27 C.F.R. § 19.45; a bond to ensure there is money to pay for any violation of the act, 26 U.S.C. § 5173; a set of regulations specifying the location, construction, arrangement, and protection necessary to facilitate inspection and the security of federal tax revenue, *id.* § 5178(a)(1)(A); a requirement that the distilling system be continuous and sealed to prevent unauthorized removal of distilled spirits prior to being counted by the gauges, *id.* § 5178(a)(2)(B); a requirement for the use of gauges that measure the strength and quantity of the spirits produced, *id.* § 5204; requirements for the provision of samples for analysis if it is suspected that the product does not comply with the law, 27 C.F.R. § 19.18; a description of the locks and seals needed to provide adequate security to the revenue, 26 U.S.C. § 5178(a)(2)(C)(ii); rules for authorized government entry and examination of the production facilities, *id.* § 5203; and the production of records and reports as necessary to account for how much distilled alcohol was made and stored. *Id.* § 5207.

*None* of these provisions are challenged here, and they comprehensively ensure that the federal government will be paid its due in taxes. In short, there is no arrow that the ban on at-home distilling adds to the federal government's quiver: its ability to collect taxes on distilled alcohol is preserved in the statute's many other provisions that Plaintiffs do not challenge.

### iii.    The At-Home Distilling Ban Is Not Plainly Adapted to Federal Taxation

The home distillery ban also flunks another test: the test of whether it is "plainly adapted" to the program of federal taxation. For one thing to be "plainly" adapted to another, the means

used must be "[i]n a manner to be easily seen or comprehended," and "[e]vidently; clearly; not obscurely" to the federal power being implemented. *See* N. Webster, *American Dictionary of the English Language* (1828) (facsimile edition) (defining "plainly"). In other words, the account of that relationship cannot require the court "to pile inference upon inference," *Lopez*, 514 U.S. at 567; instead, there must be an obvious, simple, and direct relation between the local activity and the enumerated federal power. *Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring).

However, the at-home distilling ban is not "plainly adapted," as it lacks the obvious, simple, and direct relation to federal taxation that is required. The absence of any such relation is demonstrated by the three examples just below.

- First, imagine two parcels of property next to each other, one with a shed and a still and the other with a home. As long as two different people own these two properties, the shed owner can use that shed for distilling. But if the shed owner buys the house and merges the two parcels into one, distilling at that same shed has become prohibited. Same person, same shed, same still, but now distilling has become illegal—even though the application of the ban appears to have just the same relation to federal taxation (or, more precisely, just the same lack of a relation) in each case. The ban's lack of a relationship to federal taxation becomes even more apparent if the recently merged property is quite large, such that the house is a good distance away from the still.

- Second, imagine that—rather than being miles away on the same property and thus prohibited—the shed is 10 feet away from the house, but the plots of property are just a bit different. More precisely, imagine that the same person owns both of these

properties that are quite near each other, but that someone else owns a one-foot-wide strip of land that separates the house's plot from the still's. In that case, distilling is allowed. Notably, there is nothing about the one-foot-wide strip of land that seems relevant to federal taxation. If the existence of a house and a still on the same plot of land somehow interfered with federal taxation, one might think that a still that is 10 feet away from a house would be even more problematic. Plaintiffs would respectfully suggest that this Court should recognize an obvious fact: in general, the ban on having a home and a still on the same plot of land lacks the kind of obvious, direct, and simple relation to federal tax administration that is constitutionally required, whether the still is close to the home or a long walk away.

- Third, imagine a situation that happens every day (including to Plaintiff Scott McNutt): the homeowner is allowed to distill alcohol for fuel at home, as long as his actions and decisions that pertain to distillation are entirely unrelated to the production and consumption of alcoholic beverages. Stills produce alcohol—more precisely, ethanol—and ethanol is the central element of both the fuel that legally comes from home distilleries and the beverages that might illegally come from home distilleries: that is, the ethanol in either case is chemically identical to its counterpart. In other words, hypothetically drinkable alcohol can legally be produced with a valid federal permit and stored at home in a way that poses no difficulties for tax administration—as long as the homeowner agrees not to drink any of it. If home distilling actually posed difficulties for tax administration or collection, then producing fuel alcohol would presumably raise just the same concerns. But the

federal ban on making at-home distilled beverages has no relationship to federal taxation, let alone the obvious, simple, and direct relationship that is required.

These three examples demonstrate the absence of what the Constitution requires: namely, a plainly adapted relationship between the at-home distilling ban and federal taxation. There is no justification under the law that allows the resources of the federal government (under the tax power, the commerce power, or any other power) to be mobilized in this way.

\*       \*       \*

It thus falls to the government's attorneys to explain why brewing beer at home is permitted, but why distilling alcohol at home is felonious; why distilling alcohol on a parcel without a home is permitted, but why distilling alcohol on a parcel with a home is felonious; and why distilling alcohol to use as fuel is permitted, but why distilling alcohol to use as a beverage is felonious.

Because this federal connection is required—because it is a gap that cannot be bridged— the Tenth Amendment implies that the power to regulate at-home distilling is "reserved to the states." *See* U.S. Const. amend. X. The Tenth "[A]mendment is a mere affirmation of what, upon any just reasoning, is a necessary rule of interpreting the [C]onstitution. Being an instrument of limited and enumerated powers, it follows irresistibly, that what is not conferred, is withheld, and belongs to the state authorities." 3 J. Story, *Commentaries on the Constitution of the United States* 752 (1833).

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION

Unless this court grants a preliminary injunction, plaintiffs will suffer an irreparable injury. "An irreparable injury is one that cannot be undone by monetary damages or one for which monetary damages would be 'especially difficult to calculate.'" *Heil Trailer Int'l Co. v. Kula*, 542

20

Fed. Appx. 329, 335 (5th Cir. 2013). It is thus a harm "for which there is no adequate remedy at law." *Louisiana v. Biden*, 55 F.4th 1017, 1033–34 (5th Cir. 2022) (quoting *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013)). No monetary remedy can adequately redress the liberty interests at stake in this case, and the Plaintiffs cannot and will not seek any monetary damages.

Plaintiffs assert that the home-distilling prohibition limits their liberty contrary to the Fifth Amendment's due process of law requirement—and thus create an irreparable violation of their constitutional rights. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable [harm] is necessary." *Nat'l Solid Waste Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 470 (N.D. Tex. 2012).

"'Due process of law' traces its origins to the Great Charter of individual liberty, Magna Carta." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 236 (5th Cir. 2022), *cert. denied* 143 S. Ct. 1021 (2023). "At the time of the Fifth Amendment's ratification, people universally understood 'due process of law' to convey the same meaning as the words 'by the law of the land'" in Magna Carta. *Id.* (citing *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 276 (1856) ("The words, 'due process of law,' were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in Magna Charta.")).

"Article VI of the Constitution makes the Constitution the 'supreme Law of the Land.'" *Cooper v. Aaron*, 358 U.S. 1, 18 (1958); *see also* U.S. Const. art. VI, cl. 2. As shown in Section I, the Constitution allows states and individuals the liberty to decide where and how they wish to distill alcohol—so long as the distillers pay the attendant tax to the federal government. Because the federal government is without power to enact the at-home distilling ban, it is not law. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176-77 (1803) ("a legislative act contrary to the [C]onstitution

is not law.").

As the Supreme Court noted in *McCulloch*, "should Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not entrusted to the government; it would become the painful duty of this tribunal, should a case requiring such a decision come before it, to say that such an act was not the law of the land." 17 U.S. (4 Wheat.) at 423.

The Fifth Amendment liberty interests at issue here arise from either "the Constitution itself, by reason of guarantees implicit in the word liberty," or "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Any such protected liberty interest "denotes not merely freedom from bodily restraint" but countless aspects of how one lives one's life, including "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, [and] establish a home." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). The choice of what one does at home behind closed doors is thus a core liberty interest protected by the Constitution—an interest hobbled by the federal ban in this case. "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Id.*

As explained in Section I, the federal prohibition on at-home distilling extinguishes constitutional freedoms protected by the Fifth Amendment. The loss of constitutional liberty "for even minimal periods of time ... unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021). Likewise, the threat of criminal prosecution at issue in this case constitutes irreparable injury. *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 857 (N.D. Tex. 2022) ("[A] plaintiff's purported choice to comply—or else—with a challenged government dictate, as evidenced by the plaintiff's decision to desist from engaging

in the regulated activity, is adequate to establish irreparable harm.").

Even if there were some monetary remedy that would remedy these harms—which there is not—the Defendant is entitled to sovereign immunity from such damages. Plaintiffs' injuries are therefore irreparable at law. *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). Absent this injunction, Petitioners face the prospect of felony prison time for exercising the liberty that the Constitution allows them (this appropriately assumes that Petitioners will follow other federal and state laws). Plaintiffs therefore seek only declaratory and injunctive relief, which of course cannot be evaluated in monetary terms.

## III.    A BALANCE OF EQUITIES FAVORS THE PLAINTIFFS AND DEMONSTRATES THE PUBLIC INTEREST WOULD BE SERVED BY GRANTING INJUNCTIVE RELIEF

The third and fourth requirements for issuance of a preliminary injunction should be considered together as they overlap considerably and "merge when the Government is the opposing party." *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), as revised (Nov. 25, 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

As demonstrated in this brief, the federal government has no legitimate interest in the prohibition; it is therefore unconstitutional. "There is generally no public interest in the perpetuation of unlawful agency action." *Biden*, 55 F.4th at 1035 (quoting *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)). That is because a "policy that is unconstitutional would inherently conflict with the public interest." *Lamprecht v. F.C.C.*, 958 F.2d 382, 390 (D.C. Cir. 1992); *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights."); *Llewelyn v. Oakland Cnty. Prosecutor's Off.*, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) ("it may be assumed that the Constitution is the ultimate expression of the public interest."). Meanwhile, the public has a vital interest in ensuring that everyone's liberty and freedom, as protected by the

Constitution, are respected. *BST Holdings*, 17 F.4th at 618-19 (the public interest is "served by maintaining our constitutional structure"). Thus, the balance of equities leans heavily against the government and in favor of the Plaintiffs.

Furthermore, granting this injunction would allow the Plaintiffs to start acquiring the federal permits necessary to begin distilling; it would not cause the Plaintiffs to begin distilling immediately. Many other federal requirements would have to be complied with before any distilling begins. That means that any harm that might spring from the granting of this injunction would certainly be delayed (while such applications are pending) and would likely be nonexistent.

Even after the applications for permits are granted, other related federal and state regulations will remain operative and will ensure that no harm occurs to the public and that the federal government can acquire the taxes owed to it. If the Plaintiffs are allowed to distill at home, the tax revenues they pay will presumably increase. Additionally, the benefits of allowing the Plaintiffs to exercise their liberties strongly push the balance of the equities in their favor.

## CONCLUSION

Plaintiffs have satisfied all four elements for a preliminary injunction. Plaintiffs are likely to succeed on the merits of their claim due to the lack of any legitimate federal interest at stake. The federal government simply lacks the power to regulate the conduct at issue, because it lacks any enumerated or implied powers that can legitimately drive federal action. Furthermore, there is no reason to believe that allowing Plaintiffs their freedom of action would harm federal tax collection. Plaintiffs' liberty will be irreparably harmed if the prohibition is not lifted during the pendency of the litigation, which does not seek any monetary award. Finally, a preliminary injunction will only benefit the public interest, increasing both tax revenue and liberty without harming the public, essentially because a vast assemblage of state and federal regulations would

remain in effect. A preliminary injunction should therefore be granted.


Dated: March 6, 2024                  Respectfully submitted.

                                      */s/ Devin Watkins*
                                      Devin Watkins (D.C. Bar # 155179)
                                      Dan Greenberg (D.C. Bar # 9008067)
                                      COMPETITIVE ENTERPRISE INSTITUTE
                                      1310 L St. NW, 7th Floor
                                      Washington, D.C. 20005
                                      (202) 331-1010
                                      Devin.Watkins@cei.org
                                      Dan.Greenberg@cei.org

                                      **GRIFFITH BARBEE PLLC**
                                      Casey Griffith (Texas Bar No. 24036687)
                                      Casey.Griffith@griffithbarbee.com
                                      Nicholas Kliewer (Texas Bar No. 24083315)
                                      Nick.Kliewer@griffithbarbee.com
                                      One Arts Plaza
                                      1722 Routh St., Ste. 710
                                      Dallas, Texas 75201
                                      (214) 446-6020| main
                                      (214) 446-6021| fax

                                      *Counsel for Plaintiffs*