**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **HOBBY DISTILLERS ASSOCIATION,** *et al.*, ) | |
| ) | |
|    **Plaintiffs,** ) | |
| ) | |
|    **v.** ) | **Case No. 4:23-cv-01221-P** |
| ) | |
| **ALCOHOL AND TOBACCO TAX AND** ) | |
| **TRADE BUREAU,** *et al.*, ) | |
| ) | |
|    **Defendants.** ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS'
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

    I.     Statutory and Regulatory Background.....................................................2

    II.    Factual and Procedural Background.. ....................................................4

BACKGROUND ............................................................................................................. 2

LEGAL STANDARDS .................................................................................................. 5

ARGUMENT ................................................................................................................. 6

    I.     Plaintiffs Have Not Shown a Likelihood of Success on the Merits.........................6

          A.     The Court Lacks Jurisdiction Because Plaintiffs Lack Article III Standing. ...................................................................................... 6

          B.     The Challenged Provisions Were Properly Enacted Pursuant to the Taxing Power. ....................................................................... 11

          C.     The Challenged Provisions Were Properly Enacted Under the Commerce Clause………………………………………… ............... 17

    II.    Plaintiffs Have Not Demonstrated Irreparable Harm. ...........................................20

    III.   The Public Interest and Balance of Equities Weigh Against Granting a Preliminary Injunction. ..........................................................................22

CONCLUSION................................................................................................................ 23

## TABLE OF AUTHORITIES

Cases

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) ................................................... 6

*Artis v. District of Columbia*,
   583 U.S. 71 (2018) ................................................................. 16

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ........................................... 7, 10

*Babbitt v. United Farm Workers Nat'l. Union*,
   442 U.S. 289 (1979) ................................................................ 7

*Bd. of Regents of State Colls. v. Roth*,
   408 U.S. 564 (1972) ................................................................ 8

*BST Holdings, LLC v. OSHA, United States Dep't of Lab.*,
   17 F.4th 604 (5th Cir. 2021) ............................................... 20

*Bull v. United States*,
   295 U.S. 247 (1935) .............................................................. 23

*Case v. Bowles*,
   327 U.S. 92 (1946) ................................................................ 16

*Catanese v. City of Trussville*,
   No. 2:19-CV-01517-CLM, 2021 WL 24624 (N.D. Ala. Jan. 4, 2021) ...................................... 8

*Cherokee Pump & Equip., Inc. v. Aurora Pump*,
   38 F.3d 246 (5th Cir. 1994) ................................................... 6

*Elrod v. Burns*,
   427 U.S. 347 (1976) .............................................................. 20

*Felsenheld v. United States*,
   186 U.S. 126 (1902) .............................................................. 11

*Foreman v. United States*,
   255 F. 621 (4th Cir. 1918) ................................................... 11

*Freedom from Religion Found., Inc. v. Perry*,
   CIV.A. No. H-11-2585, 2011 WL 3269339 (S.D. Tex. July 28, 2011) .................................. 10

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) ................................................................................................ 22

*Gbalazeh v. City of Dallas*,
   394 F. Supp. 3d 666 (N.D. Tex. 2019) ............................................................... 20

*Glob. Oil Tools, Inc. v. Expeditors Int'l of Wash., Inc.*, Civ. A.,
   No. 16-16372, 2018 WL 263233 (E.D. La. Jan. 2, 2018) .................................. 20

*Goldstein v. Miller*,
   488 F. Supp. 156 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1981), *and aff'd sub nom.*
   *Overbrook Egg Nog Corp. v. Miller*, 649 F.2d 864 (4th Cir. 1981) ......................... 11

*Gonzalez v. Raich*,
   545 U.S. 1 (2005) ........................................................................................... 17, 19

*Hein Freedom from Religion Found., Inc.*,
   551 U.S. 587 (2007) .............................................................................................. 6

*In re Kollock*,
   165 U.S. 526 (1897) ............................................................................................ 11

*Jordan v. Fisher*,
   823 F.3d 805 (5th Cir. 2016) ................................................................................ 6

*KVUE, Inc. v. Moore*,
   709 F.2d 922 (5th Cir. 1983) ................................................................................ 9

*Lange v. Phinney*,
   507 F.2d 1000 (5th Cir. 1975) ............................................................................ 23

*Leal v. Becerra*,
   No. 21-10302, 2022 WL 2981427 (5th Cir. July 27, 2022) ................................. 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 6

*McCulloch v. Maryland*,
   17 U.S. (4 Wheat.) 316 (1819) ...................................................................... 12, 16

*Meyer v. Nebraska*,
   262 U.S. 390 (1923) .............................................................................................. 8

*Miss. State Democratic Party v. Barbour*,
    529 F.3d 538 (5th Cir. 2008) ................................................................ 9

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ........................................................................... 13

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ................................................................ 7

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) ................................................................ 7

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*,
    719 F.3d 338 (5th Cir. 2013) ................................................................ 7

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................... 6, 22

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) ............................................................................. 17

*Ripper v. United States*,
    178 F. 24 (8th Cir. 1910) ........................................................ 11, 14, 16

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ................................................................ 7

*Robinson v. District of Columbia*,
    234 F. Supp. 3d 14 (D.D.C. 2017) ......................................................... 8

*Rostker v. Goldberg*,
    453 U.S. 57 (1981) ........................................................................... 22

*Sabri v. United States*,
    541 U.S. 600 (2004) .......................................................................... 16

*Seminole Nursing Home, Inc. v. Comm'r of IRS*,
    12 F.4th 1150 (10th Cir. 2021) ........................................................... 23

*Sonzinsky v. United States*,
    300 U.S. 506 (1937) .......................................................................... 16

*Steward Mach. Co. v. Davis*,
    301 U.S. 548 (1937) .......................................................................... 11

*Stilinovic v. United States*,
    336 F.2d 862 (8th Cir. 1964) ................................................................ 11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................... 10

*Texas v. United States*,
    328 F. Supp. 3d 662 (S.D. Tex. 2018) .................................................. 21

*United States v. Behren*,
    65 F. Supp. 3d 1140 (D. Colo. 2014) ..................................................... 9

*United States v. Di Santo*,
    20 F. Supp. 254 (N.D. Ohio 1935),  *aff'd*, 93 F.2d 948 (6th Cir. 1937) ................................... 15

*United States v. Goldberg*,
    225 F.2d 180 (8th Cir. 1955) ............................................................... 12

*United States v. Lopez*,
    514 U.S. 549 (1995) ........................................................................... 19

*United States v. Ulrici*,
    111 U.S. 38 (1884) ...................................................................... 12, 13

*VanDerStok v. Garland*,
    633 F. Supp. 3d 847 (N.D. Tex. 2022) .................................................. 20

*W. Sur. Co. v. PASI of LA, Inc.*,
    334 F. Supp. 3d 764 (M.D. La. 2018) .................................................... 20

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ............................................................................. 8

*White v. United States*,
    601 F.3d 545 (6th Cir. 2010) ............................................................... 10

*Wickard v. Filburn*,
    317 U.S. 111 (1942) ........................................................................... 19

*Wilkinson v. Austin*,
    545 U.S. 209 (2005) ............................................................................. 8

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) ........................................................... 21

v

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952)..................................................................................... 23

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) ...................................................................... 9

<u>Constitutional Provisions</u>

U.S. Const. art. I, § 8, cl. 1............................................................................ 11

U.S. Const. art. I, § 8, cl. 3............................................................................ 17

U.S. Const. art. I, § 8, cl. 18................................................................... 11, 17

<u>Statutes</u>

26 U.S.C. § 5001 ........................................................................................ 2, 4

26 U.S.C. § 5002 ........................................................................................ 2, 3

26 U.S.C. § 5004 ...................................................................................... 2, 13

26 U.S.C. § 5005 ...................................................................................... 2, 13

26 U.S.C. § 5006 ........................................................................................... 4

26 U.S.C. § 5041 ........................................................................................... 2

26 U.S.C. § 5051 ........................................................................................... 2

26 U.S.C. § 5061 ...................................................................................... 4, 10

26 U.S.C. § 5066 ........................................................................................... 2

26 U.S.C. § 5171 ................................................................................... 3, 4, 18

26 U.S.C. § 5173 ......................................................................................... 18

26 U.S.C. § 5178 .................................................................................... *passim*

26 U.S.C. § 5179 ......................................................................................... 18

26 U.S.C. § 5181 ......................................................................................... 14

26 U.S.C. § 5203 .................................................................................... 4, 15

26 U.S.C. § 5204 ........................................................................................... 2

26 U.S.C. § 5212 ............................................................................................................... 13

26 U.S.C. § 5271 ................................................................................................................. 3

26 U.S.C. § 5601 ........................................................................................................ *passim*

26 U.S.C. § 5001 *et seq.* ................................................................................................... 17

26 U.S.C. §§ 5001-5011 ...................................................................................................... 2

26 U.S.C. §§ 5171-5182 ................................................................................................ 2, 13

26 U.S.C. §§ 5201-5251 ...................................................................................................... 2

26 U.S.C. §§ 5271-5276 ...................................................................................................... 2

26 U.S.C. §§ 5291-5315 ...................................................................................................... 2

26 U.S.C. §§ 5601-5615 ................................................................................................... 2, 4

27 U.S.C. § 203 ......................................................................................................... 3, 4, 18

27 U.S.C. § 204 ......................................................................................................... 3, 4, 21

27 U.S.C. § 211 ................................................................................................................... 3

27 U.S.C. § 203 *et seq.* ................................................................................................... 17

Act of July 20, 1868, § 12, 15 Stat. 125. ......................................................................... 12

Tex. Alco. Bev. Code, § 103.01 ..................................................................................... 10

Tex. Alco. Bev. Code, § 103.02 ..................................................................................... 10

Rules

Fed. R. Civ. P. 12 ............................................................................................................... 6

Regulations

27 C.F.R. pt. 19 ..................................................................................................... 2, 14, 18

27 C.F.R. § 1.24 .......................................................................................................... 4, 21

27 C.F.R. § 1.60 ................................................................................................................. 3

27 C.F.R. § 5.1 ............................................................................................................. 2

27 C.F.R. § 19.51 ......................................................................................................... 19

27 C.F.R. § 19.52 ................................................................................................... 19, 21

27 C.F.R. § 19.53 ......................................................................................................... 21

27 C.F.R. § 19.71 ........................................................................................................... 4

27 C.F.R. § 19.73-19.77 ............................................................................................... 21

27 C.F.R. § 19.188 ....................................................................................................... 21

27 C.F.R. § 19.192 ....................................................................................................... 21

27 C.F.R. § 19.663 ....................................................................................................... 14

27 C.F.R. § 1.21 ............................................................................................................. 4

27 C.F.R. §§ 19.229-19.240 .......................................................................................... 4

27 C.F.R. §§ 19.402-19.407 ........................................................................................ 13

76 Fed. Reg. 9080 (Feb. 16, 2011) ................................................................................ 2

Other Authorities

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
§ 2948.1 (3d ed. 2013) ............................................................................................ 20

Congressional Globe, 39th Cong., 1st Sess. 2839 (1866) ............................................ 12

H.R. Rep. No. 39-24 (1867) ......................................................................................... 12

## INTRODUCTION

For more than 150 years, Congress has taxed distilled spirits under an intricate statutory scheme. As part of that scheme, and to protect the substantial revenue raised from the excise tax on distilled spirits, Congress placed limitations on where distilled spirit plants may be located. More than a century and a half after these statutory provisions were enacted, years after several Plaintiffs became aware of them, and three months after filing this lawsuit, Plaintiffs now ask the Court to grant them the extraordinary remedy of a preliminary injunction barring the government from enforcing the challenged provisions.

The Court should deny Plaintiffs' motion. First, Plaintiffs have not demonstrated a likelihood of success on the merits. At the threshold, the Court lacks jurisdiction to grant any relief in this case because Plaintiffs have not established Article III standing. On the merits, the challenged statutory provisions—which have been in force for over a century and a half—are not unconstitutional. To the contrary, longstanding Supreme Court precedent confirms that Congress had authority to enact the challenged provisions under both the Taxing Power and the Commerce Clause. Second, both Plaintiffs' lack of Article III standing and their substantial delay in seeking preliminary injunctive relief preclude any finding of irreparable harm if their motion is denied. Finally, the public interest and balance of equities weigh against issuance of an injunction.

At bottom, Plaintiffs' complaint manifests a policy disagreement: Plaintiffs maintain that there are better or wiser measures Congress could have taken to protect the revenue from taxes on distilled spirits. By Plaintiffs' own account, Plaintiff Hobby Distillers Association has spent considerable time lobbying Congress to pass legislation that aligns with Plaintiffs' position. But Plaintiffs' lack of success on the legislative front does not provide grounds for a constitutional claim, let alone a basis to obtain the extraordinary preliminary injunctive relief sought here.

Accordingly, the Court should deny the motion for preliminary injunction.

## BACKGROUND

### I.    Statutory and Regulatory Background.

The taxing scheme for distilled spirits is detailed and intricate. *See generally* 26 U.S.C. §§ 5001-5011, 5066, 5171-5182, 5201-5251, 5271-5276, 5291-5315, 5601-5615. Distilled spirits are taxed on the basis of a "proof gallon." *See* 26 U.S.C. § 5001. This concept incorporates into the tax basis both alcohol percentage by volume ("ABV") and fluid volume, such that one gallon of 40% ABV distilled spirits is taxed less than one gallon of 80% ABV distilled spirits.[1] *See* 26 U.S.C. §§ 5001, 5002. The gauging process required to accurately assess distilled spirits excise tax liability requires a high degree of technical proficiency. *See* 26 U.S.C. § 5204; 27 C.F.R. pt. 19, Subpart K.[2] Under 26 U.S.C. § 5001(b), the tax on distilled spirits attaches "as soon as this substance is in existence." The tax on distilled spirits is a first lien, "from the time the spirits are in existence as such until the tax is paid." *Id.* § 5004(a)(1). The Internal Revenue Code imposes liability on "every person in any manner interested in the use of any still, distilling apparatus, or distillery. . .  for the taxes imposed by law on the distilling spirits produced therefrom." *Id.* § 5005(b)(1).

To protect and facilitate collection of the revenue raised by the excise tax on distilled spirits, Congress has prescribed certain "[q]ualification [r]equirements" for distilled spirits plants.[3] *See* 26 U.S.C. §§ 5171-5182. For example, distilling systems must be "so designed and constructed[,] and so connected as to prevent the unauthorized removal of distilled spirits before

---

[1] The regulatory definition of a proof gallon is "a gallon of liquid at 60° Fahrenheit that contains 50 percent by volume of ethyl alcohol having a specific gravity of 0.7939 at 60° Fahrenheit, referred to water at 60°Fahrenheit as unity, or the alcoholic equivalent thereof."  27 C.F.R. § 5.1.

[2] Distilled spirits are taxed differently from beer and wine. While distilled spirits are taxed on a proof gallon basis, wine is taxed on volume based on tax classes prescribed in statute differentiated by ABV, carbonation and ingredient composition; and beer is taxed on volume by the barrel. 26 U.S.C. §§ 5041, 5051.

[3] The Internal Revenue Code defines a "distilled spirits plant" as "an establishment which is qualified under subchapter B to perform any distilled spirits operation." 26 U.S.C. § 5002(a)(1). Federal regulations further explain that "'distilled spirits plant' (DSP) refers to a plant at which distilled spirits are manufactured or produced, aged or stored, or packaged or bottled, for either beverage or industrial use." *Revision of Distilled Spirits Plant Regulations*, 76 Fed. Reg. 9080, 9080 (Feb. 16, 2011).

2

their production gauge." 26 U.S.C. § 5178(a)(2)(B). Under § 5178(a)(2)(C), the Secretary of the Treasury is authorized "to order and require" both "(i) such identification of, changes of, and additions to, distilling apparatus, connecting pipes, pumps, tanks, and any machinery connected with or used in or on the premises," and "(ii) such fastenings, locks, and seals to be part of any of the stills, tubs, pipes, tanks, and other equipment, as [the Secretary] may deem necessary to facilitate inspection and afford adequate security to the revenue." *Id.* § 5178(a)(2)(C). The "qualification requirements" also address permissible locations for distilled spirits plants. Relevant to this case, Congress has specified that:

> No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under [§ 5178(b)]).

*Id.* § 5178(a)(1)(B).

Distilled spirits plant operations must be conducted only on bonded premises, *see id.* § 5002(a)(3), and only after the Secretary of the Treasury has received and approved of the operator's registration. *Id.* § 5171(a), (c). Distilled spirits plants producing beverage alcohol must further comply with the Federal Alcohol Administration Act ("FAA Act"), 27 U.S.C. § 203. And even distilled spirits plants that do not need to comply with the FAA Act—those that do not produce beverage alcohol—must apply for a permit under 26 U.S.C. § 5271. *See* 26 U.S.C. § 5171(d)(1); 27 U.S.C. § 204(c) (requiring separate applications and permits under the FAA Act for "distilled spirits"); 27 U.S.C. § 211(a)(5) (defining "distilled spirits" subject to the FAA Act application and permit requirement as being only "for non-industrial use"); and 27 C.F.R. § 1.60 (defining spirits for "nonindustrial use" by exclusion).

To operate a distilled spirits plant producing beverage alcohol, a prospective distiller must complete both a Distilled Spirits Plant Registration, *see* 26 U.S.C. § 5171(c), and a permit application under the FAA Act, *see* 27 U.S.C. § 203. Both the permit and the registration must be approved by the U.S. Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau

("TTB") before operation of the distilled spirits plant may lawfully begin. *See* 26 U.S.C. § 5171; 27 U.S.C. § 203; 27 C.F.R. §§ 1.21, 19.71. TTB may deny an FAA Act basic permit if the applicant is "not likely to . . . maintain such operations in conformity with Federal law," or if "the operations proposed to be conducted by such person are in violation of the law of the State in which they are to be conducted." 27 U.S.C. § 204(a)(2); *see also id.* (setting forth other bases on which TTB may deny an application); 27 C.F.R. § 1.24 (same). Distillers must allow access to distilled spirits plant premises by federal revenue officers at any time, day or night. 26 U.S.C. § 5203.

The tax on spirits produced at a qualified distilled spirits plant can be pre-paid (before withdrawal from a bonded premises), or on a deferred basis (after spirits are withdrawn from a bonded premises) pursuant to a tax return based on removals during the applicable return period. 26 U.S.C. § 5061; 27 C.F.R. §§ 19.229-19.240. The tax on distilled spirits that are not produced at a qualified distilled spirits plant is due and payable immediately upon production. 26 U.S.C. § 5006(c)(2). Further, distilled spirits produced other than as authorized by Chapter 51 of the Internal Revenue Code are not eligible for the reduced rates of tax under 26 U.S.C. § 5001(c).

Congress has imposed civil and criminal penalties for failure to comply with the Internal Revenue Code's provisions concerning distilled spirits. *See* 26 U.S.C. §§ 5601-5615. Among other things, Congress has made it a criminal offense for a person to possess an unregistered still, *id.* § 5601(a)(1); to distill spirits on prohibited premises—such as a dwelling house, boat, or premises where beer or wine is made or produced, *id.* § 5601(a)(6); or to produce distilled spirits when one is not a distiller authorized by law to produce distilled spirits, *id.* § 5601(a)(8).

## II.     Factual and Procedural Background.

Individual Plaintiffs are members of Plaintiff Hobby Distillers Association, "a membership organization that encourages the legalization of at-home hobby distilling." Compl. ¶ 4, ECF No. 1. Individual Plaintiffs wish to distill alcohol at home for their own consumption. *Id.* ¶ 26. One individual Plaintiff owns a still that he keeps in his garage, Decl. of Thomas O. Cowdrey III ¶ 4, ECF No. 17-2 ("Cowdrey Decl."), while another explicitly notes that he does not possess the necessary equipment to distill spirits, Decl. of John Prince III ¶ 4, ECF No. 17-2 ("Prince Decl.").

Plaintiffs allege that if the challenged statutory provisions were "lifted or made not applicable to them, individual Plaintiffs and members of Plaintiff Hobby Distillery [sic] Association would attempt to acquire the necessary state and federal permits as well as all other materials necessary to distill at home legally." Compl. ¶ 32. In sworn declarations, the individual Plaintiffs affirm their wish to distill spirits at home, and state that they will only do so to the extent permitted by federal, state, and local law. Decl. of Rick Morris ¶ 14, ECF No. 17-2 ("Morris Decl."); Decl. of Scott McNutt ¶ 11, ECF No. 17-2 ("McNutt Decl."); Prince Decl. ¶ 7; Cowdrey Decl. ¶ 6. However, no individual Plaintiff has alleged or declared that he currently possesses or will imminently obtain the necessary materials, equipment, and permits for operating a distilled spirits plant in his home. In addition, Plaintiffs have submitted no evidence supporting their allegation that "members . . . of Hobby Distiller[s] Association" other than individual Plaintiffs even "would attempt to acquire the necessary" materials and permits to distill spirits at home if the Court grants relief in this case. Compl. ¶ 32. TTB's records indicate that none of the Plaintiffs has ever submitted an FAA Act basic permit application (TTB Form 5100.24) or IRC Registration (TTB Form 5110.41) to establish a distilled spirits plant in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house. Decl. of Frank L. Johnson ¶ 15 ("Johnson Decl.") (Defs.' App'x at 4).

Plaintiffs filed the instant lawsuit on December 8, 2023. *See generally* Compl. The Complaint asserts a single putative claim for relief, entitled "UNCONSTITUTIONAL FEDERAL PROHIBITION ON AT-HOME DISTILLING," which alleges that Congress lacked constitutional authority to enact 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6) under the Commerce Clause or Taxing Power. Compl. ¶¶ 35-57. On March 6, 2024, Plaintiffs filed a motion for a preliminary injunction, asking the Court to enjoin Defendants from enforcing 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6), or their "implementing rules," against members of Hobby Distillers Association and the individual Plaintiffs "during litigation." Mot. for Prelim. Injunction, ECF No. 17.

## LEGAL STANDARDS

Preliminary injunctions are extraordinary and drastic remedies. *Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994). The party seeking a preliminary injunction

bears the burden to show: "a substantial likelihood of success on the merits," "a substantial threat of irreparable injury," "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (citation omitted). When the federal government is the defendant, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The movant's failure to demonstrate any of the factors is sufficient to deny injunctive relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

## ARGUMENT

### I. Plaintiffs Have Not Shown a Likelihood of Success on the Merits.[4]

#### A. The Court Lacks Jurisdiction Because Plaintiffs Lack Article III Standing.

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing enforces the Constitution's case-or-controversy requirement.'" *Hein v. Freedom from Religion Found.*, *Inc*., 551 U.S. 587, 597-98 (2007) (cleaned up). To establish standing, a plaintiff must show that it has suffered or will imminently suffer an "injury in fact" "caused" by the challenged government action that a favorable decision would likely "redress." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992). To satisfy the injury-in-fact requirement, a plaintiff must allege an invasion of a "legally protected interest" that is "concrete" and "particularized" and "actual or imminent"—not "conjectural" or "hypothetical." *Id.* at 560 (citation omitted). An association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

---

[4] Consistent with the Federal Rules of Civil Procedure, Defendants reserve the right to assert any and all available defenses in a separate motion under Rule 12(b); the failure to assert any defense in this response to Plaintiffs' motion for preliminary injunction does not constitute a waiver or forfeiture of any argument that could be asserted in a Rule 12 motion, which Defendants may submit in response to Plaintiffs' Complaint.

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citation omitted).

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Generally, this means that a threatened injury must be "certainly impending." *Id.* (citation omitted). However, in pre-enforcement challenges to criminal statutes, a plaintiff may establish that it faces an imminent, concrete injury by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* To meet this standard, a plaintiff need not necessarily "first expose himself to actual arrest or prosecution," *id.*, but the plaintiff must demonstrate a "serious" intention to disobey the statute, *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (citation omitted). Here, Plaintiffs do not allege—let alone present evidence—that either challenged statutory provision has been enforced against them, nor that they are facing any "certainly impending" adverse action by TTB or defendant Department of Justice due to the challenged provisions. *Babbitt*, 442 U.S. at 298 (citation omitted). Thus, they can establish an injury in fact only if they satisfy the "credible threat" standard for pre-enforcement challenges. They cannot.

*First*, Plaintiffs do not seek to engage in a course of conduct "arguably affected with a constitutional interest." *Id.* at 298. Because the statute at issue must implicate constitutional rights, standing to bring a pre-enforcement challenge is generally limited to First Amendment cases, or, less frequently, Second Amendment or Due Process claims. *See, e.g.*, *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) (First Amendment); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) (Second Amendment); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (Due Process). While Plaintiffs in this case claim that Congress lacked constitutional authority to enact the statutory provisions at issue, they do not assert a claim that the statute violates any constitutionally protected right. Compl. ¶¶ 35-57.

7

Plaintiffs' new contention, raised in support of their motion for preliminary injunction, that the bar on locating a distilled spirits plant in a dwelling "limits their liberty contrary to the Fifth Amendment's due process of law requirement," is unavailing. Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 21 ("Pl. Mem."), ECF No. 17-1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). Courts have recognized that constitutionally protected liberty interests include "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, [and] establish a home." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) (citation omitted). While this definition is "broad," *id.*, it is not without limits. The Supreme Court has emphasized that the Due Process Clause protects only "fundamental rights and liberties" that are "deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (cleaned up) (holding that there is no constitutionally protected liberty interest in assisted suicide).

Plaintiffs cite no precedent supporting a conclusion that distilling spirits is among the activities in which courts have recognized a constitutionally protected liberty interest, that is, one of "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). To the contrary, multiple courts have rejected assertions of liberty interests related to alcoholic beverages. *See, e.g.*, *Catanese v. City of Trussville*, No. 2:19-CV-01517-CLM, 2021 WL 24624, at *3 (N.D. Ala. Jan. 4, 2021) (concluding that plaintiff had no liberty interest in liquor license); *Robinson v. District of Columbia*, 234 F. Supp. 3d 14, 25 (D.D.C. 2017) ("[C]onsidering both the asserted right's proper articulation and the extensive history of alcohol regulation in this country, it is difficult to imagine any successful argument that the possession of an unsealed container of alcohol in public is 'deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty.'" (citation omitted)); *United States v. Behren*, 65 F. Supp. 3d 1140, 1163 (D. Colo. 2014) ("There is no authority for the

proposition that the ban on possession of alcohol affects a significant liberty interest."). The absence of a procedural or substantive due process claim in Plaintiffs' complaint belies their suggestion that restrictions on permissible locations for distilled spirits plants even arguably implicate any such liberty interest.

*Second*, Plaintiffs have not plausibly alleged—let alone presented evidence of— a "serious intention" to engage in conduct proscribed by § 5601(a)(6). *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). As the Fifth Circuit has explained, "[a] litigant may not . . . challenge the constitutionality of a . . . criminal statute merely because he desires to wipe it off the books or even because he may some day wish to act in a fashion that violates it." *KVUE, Inc. v. Moore*, 709 F.2d 922, 928 (5th Cir. 1983), *aff'd sub nom. Texas v. KVUE-TV, Inc.*, 465 U.S. 1092 (1984); *see, e.g.*, *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008) ("Without concrete plans or any objective evidence to demonstrate a 'serious interest' in [violating a statute, plaintiff] suffered no threat of *imminent* injury."). Rather, "a litigant must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *KVUE, Inc.*, 709 F.2d at 928 (citation omitted).

Here, Plaintiffs do not allege that they intend to begin home distilling of spirits should the Court grant relief in this case. They merely allege that the individual Plaintiffs "wish to distill alcohol at home for their own consumption" and "[i]f the federal prohibition were lifted or made not applicable to them, [they] would attempt to acquire the necessary state and federal permits as well as all other materials necessary to distill at home legally." Compl. ¶¶ 26, 32. In other words, even if the Court rules in their favor, Plaintiffs' home distilling plans depend on their obtaining the necessary materials and applying for and obtaining required state and federal permits—a sequence of events which may or may not come to pass. The declarations submitted by the individual Plaintiffs confirm the contingent nature of their plans. *See* Morris Decl. ¶ 15; McNutt Decl. ¶¶ 10, 12; Prince Decl. ¶¶ 4, 6-7; Cowdrey Decl. ¶ 6.

*Third*, even if Plaintiffs had plausibly alleged a serious intention to engage in proscribed conduct, they would fail to establish a credible threat of prosecution. In considering whether a

credible threat of prosecution exists, the Supreme Court has considered: (1) the "history of past enforcement," (2) whether the enforcement mechanism allows "any person" to initiate enforcement or whether initiation authority is "limited to a prosecutor or an agency" and (3) whether the enforcement "proceedings are not a rare occurrence." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). Only one of the challenged statutory provisions, 26 U.S.C. § 5601(a)(6), imposes any criminal (or civil) penalties. And Plaintiffs have offered no allegations or evidence whatsoever regarding the history or frequency of the government's enforcement of § 5601(a)(6). Thus, they have not established a credible threat of prosecution.

Because they cannot establish an injury in fact, none of the individual Plaintiffs has standing to challenge the statutory provisions at issue,[5] and Hobby Distillers Association lacks standing because it cannot show that "its members would otherwise have standing to sue in their own right." *Ass'n of Am. Physicians*, 627 F.3d at 550 (citation omitted). Accordingly, the Court lacks jurisdiction to grant preliminary relief or any relief. *See, e.g.*, *Freedom from Religion Found., Inc. v. Perry*, CIV.A. No. H-11-2585, 2011 WL 3269339, at *6 (S.D. Tex. July 28, 2011) (denying motion for preliminary injunction and dismissing case based on finding that plaintiffs "ha[d] not asserted facts that would support a 'concrete and particularized' injury as required for Article III standing").

---

[5] Plaintiffs also may not be able to show traceability and redressability: Plaintiffs acknowledge that the distilling activities they wish to undertake would be subject to various state and local restrictions and requirements. *See* Morris Decl. ¶ 15; McNutt Decl. ¶ 12; Prince Decl. ¶ 7; Cowdrey Decl. ¶ 6. But Plaintiffs do not allege or present evidence that home distilling is even permitted under applicable state and local laws. *Cf.* Tex. Alco. Bev. Code, §§ 103.01-.02 (providing, *inter alia*, that no person may manufacture an "illicit beverage" or "possess equipment or material designed for, capable of use for, or used in manufacturing an illicit beverage"). "When multiple laws cause the same harm, that injury may not be traceable or redressable when only one of those laws is challenged." *Leal v. Becerra*, No. 21-10302, 2022 WL 2981427, at *2 (5th Cir. July 27, 2022) (per curiam) (unpublished) (citation omitted); *see, e.g.*, *White v. United States*, 601 F.3d 545, 552-53 (6th Cir. 2010) (holding that traceability and redressability were not satisfied when plaintiffs challenged a federal ban on cockfighting but not state laws prohibiting the same).

**B.  The Challenged Provisions Were Properly Enacted Pursuant to the Taxing Power.**

The Constitution gives Congress power "(t)o lay and collect Taxes, Duties, Imposts and Excises." U.S. CONST., art. I, § 8, cl. 1. Congress may also pass laws that are "necessary and proper" to execute Congress's other enumerated powers, including the Taxing Power. U.S. CONST., art. I, § 8, cl. 18. The Taxing Power is "comprehensive," *Steward Mach. Co. v. Davis*, 301 U.S. 548, 581-82 (1937), and it is well established that statutes enacted to protect the revenue are valid exercises of this power. *See, e.g.*, *Stilinovic v. United States*, 336 F.2d 862, 864-65 (8th Cir. 1964) (holding that Congress "acted within its constitutional power to facilitate collection of the revenue" in enacting statute that prohibited alteration of the contents of liquor bottles). Per the Supreme Court, "the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe any rule or regulation which is not in itself unreasonable." *Felsenheld v. United States*, 186 U.S. 126, 132 (1902); *see also Foreman v. United States*, 255 F. 621, 623 (4th Cir. 1918) (noting the Supreme Court's recognition that "in a revenue statute the Congress may make any rule or regulation which is not in itself unreasonable, although its effect on the revenue be only remote or incidental, and its effect on the public health or morals direct and obvious" (citing *In re Kollock*, 165 U.S. 526, 526-36 (1897); *Felsenheld*, 186 U.S. 126)). Courts have upheld a wide range of statutory and regulatory restrictions on the production of liquor and other taxable commodities. *See, e.g.*, *Ripper v. United States*, 178 F. 24, 28 (8th Cir. 1910) (rejecting contention that statute limiting retail sales of margarine to "original stamped packages, in quantities not exceeding ten pounds" was unconstitutional because it had "no effect in preventing frauds on the revenue"); *Goldstein v. Miller*, 488 F. Supp. 156, 170 (D. Md. 1980) (rejecting plaintiffs' argument that "the regulation of [liquor] bottle sizes bears no reasonable relationship to the protection of the revenue"), *aff'd*, 649 F.2d 863 (4th Cir. 1981), *and aff'd sub nom. Overbrook Egg Nog Corp. v. Miller*, 649 F.2d 864 (4th Cir. 1981).

Here, the challenged statutory provisions concerning the manufacture of distilled spirits, a taxed commodity, are not only "plainly adapted" to Congress's exercise of the taxing authority,

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819), but also integrally connected to protection of the revenue, and thus fall squarely within Congress's enumerated powers.

"An elaborate system has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955) (holding that regulation regarding labeling of distilled spirits was "reasonably related to protection of the revenue"). The statutory provisions at issue were enacted in 1868 following the Civil War. AN ACT IMPOSING TAXES ON DISTILLED SPIRITS AND TOBACCO AND FOR OTHER PURPOSES ("ACT OF JULY 20, 1868"), § 12, 15 Stat. 125, 128. Prior to passage, the U.S. House of Representatives convened a select committee "to investigate and report … the facts as to any frauds or evasions in the payment of internal duties, … or alleged fraud of any parties concerned in the manufacture of distilled spirits …." H.R. Rep. No. 39-24, at 1 (1867). The select committee performed its investigation, and reported that especially for distilled spirits, "the most stupendous frauds are practiced against the government in the collection of its revenue[,]" adding that, "at least seven-eighths of the entire amount of spirits manufactured…have escaped taxation." *Id.* The select committee added, "if the present condition of affairs is to be continued, that which has been regarded as one of the principal sources of internal revenue may now be deemed substantially exhausted." *Id.* at 2. The urgent necessity of preventing concealment of stills and "frauds on the revenue" informed Congress's decision to prohibit distilling operations in certain locations. *See* Congressional Globe, 39th Cong., 1st Sess. 2839, 2841 (1866) (rejecting amendment to Act that would have removed breweries from the list of prohibited premises and adopting amendment adding "or in a dwelling house").

The provisions challenged in this case are thus part of a well-considered scheme adopted to protect the revenue generated by the excise tax on distilled spirits. The Supreme Court observed in *United States v. Ulrici*:

> It is clear, even upon a cursory reading, that the well-considered and minute provisions of the Revised Statutes found in chapter 4, entitled 'Distilled Spirits,' of title 35, entitled 'Internal Revenue,' were adopted with one purpose only, namely, to secure the payment of the tax imposed by law upon distilled spirits. All the

regulations for the manufacture and storage, the marking, branding, numbering, and stamping with taxstamps of distilled spirits, and all the penalties, forfeitures, fines, and imprisonments prescribed by the chapter mentioned have that end only in view.

111 U.S. 38, 40 (1884). Plaintiffs' complaint asks the Court to substitute itself for Congress and disrupt this carefully designed set of requirements, restrictions, and enforcement mechanisms.

Plaintiffs' arguments that the challenged statutory provisions are not "appropriate" and "plainly adapted" to Congress's exercise of the Taxing Power or "really calculated to effect that exercise" lack merit. *See* Pl. Mem. at 14-20.

*First*, Plaintiffs suggest that if the government contends that the "Taxing Power allows the federal government to ban anything it can tax, such advocacy would necessarily imply an astonishing and unprecedented expansion in the scope of federal power." Pl. Mem. at 13. This argument attacks a strawman. As explained above, the statutory provisions challenged by Plaintiffs do not comprise a ban on distilled spirits, but rather restrictions on the permissible premises for distilled spirits plants, enacted to prevent diversion of the revenue. *See supra*, at 14, 16-17. These premises requirements operate among numerous other "qualification requirements," 26 U.S.C. §§ 5171-5182 none of which Plaintiffs purport to challenge here.[6]

*Second*, Plaintiffs' suggestion that the challenged provisions are unreasonable because Congress has not imposed the same restrictions on makers of wine and beer, Pl. Mem. at 15, ignores the fact that the statutory schemes for taxes on beer and wine are distinct from that for excise taxes on distilled spirits. For example, unlike beer and wine, the tax on distilled spirits is a first lien, "from the time the spirits are in existence as such until the tax is paid." 26 U.S.C. § 5004. In addition, spirits can only be transferred in bond pursuant to approval of TTB F 5100.16 – Application for Transfer of Spirits and/or Denatured Spirits in Bond. *See* 26 U.S.C. §§ 5005, 5212; 27 C.F.R. §§ 19.402-19.407. Transfers of bulk wine and beer do not require an approved

---

[6] Further, even where statutory provisions could be said to comprise a "ban" on a taxable commodity, they may still fall within the scope of Congress's Taxing Power. *See generally Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 567 (2012) ("Today, federal and state taxes can compose more than half the retail price of cigarettes, not just to raise more money, but to encourage people to quit smoking. And we have upheld such obviously regulatory measures as taxes on selling marijuana and sawed-off shotguns.").

application. In 2023, TTB reported more tax revenue from distilled spirits from all wine and beer taxes, combined. *See* TTB, *Statistical Release, Tax Collections Fiscal Year 2023*, https://www.ttb.gov/images/pdfs/statistics/4thqrt/final2023.pdf (Dec. 5, 2023) (showing over $7 billion in distilled spirits tax revenue for fiscal year 2023, compared with $4 billion in combined tax revenue from beer and wine). In any case, Congress's decision not to enact a particular restriction to protect the tax revenue on one commodity does not render unreasonable its determination that such a restriction is needed to protect the revenue raised from taxes on another commodity. *Cf. Ripper*, 178 F. at 28 ("Congress has a wide discretion in selecting the subjects of taxation within its province, and in prescribing regulations to facilitate the collection of internal revenue and to prevent frauds thereon, which will not be supervised by the courts.").

Nor is there merit to Plaintiffs' assertion that the challenged provisions are not reasonable exercises of the Taxing Power because Congress treats fuel spirits and beverage spirits differently, Pl. Mem. at 19-20. As an initial matter, this argument rests on an inaccurate premise—under the existing statutory and regulatory scheme, neither beverage distilling plants nor distilling plants used to produce fuel alcohol (fuel spirits) may be located in a dwelling. *See generally* 26 U.S.C. § 5178. An alcohol fuel plant ("AFP") is a type of distilled spirits plant authorized under 26 U.S.C. § 5181 and established pursuant to regulations in 27 C.F.R. part 19, subpart X to produce (non-beverage) fuel alcohol. AFPs are subject to the same location restrictions imposed under the Internal Revenue Code as distilled spirits plants generally, including the restriction on placement in dwelling houses in 26 U.S.C. § 5178(a)(1)(B). Section 5181 delegates express authority to waive any provision of Chapter 51 of the Internal Revenue Code through regulation if the Secretary of the Treasury finds it necessary to carry out the provisions of § 5181. TTB regulations allow for such waivers, 27 C.F.R. § 19.663, except with respect to "[a]ny provision applicable to distilled spirits that deal with penalty, seizure, or forfeiture…," which includes § 5601(a)(6). Section 5601(a)(6) penalizes the production of distilled spirts on prohibited premises, and the waiver in 27 C.F.R. § 19.663 thus does not extend to the premises restrictions set forth in 26 U.S.C. § 5178(a)(1)(B). Regardless, a determination by Congress to differently regulate fuel spirits would

14

not remove Congress's authority to adopt statutory measures to protect the tax revenue from beverage spirits specifically.

*Third*, Plaintiffs argue, in various ways, that Congress could adequately protect the revenue without the challenged provisions. These arguments are both unsupported by evidence and irrelevant to the constitutional question before the Court. For example, Plaintiffs suggest that Congress should trust persons who distill liquor at home to be as diligent in paying their taxes as any other "home-based businesses." Pl. Mem. at 15-16. This assertion fails to acknowledge the distinct features of the excise tax on distilled spirits that make diversion or concealment of the revenue particular risks. More importantly, Plaintiffs' insistence that "[m]illions of Americans" comply with home business-related tax obligations, *id.* at 15, is neither here nor there. The fact that some, or even most, taxpayers might be expected to pay required taxes even in the absence of monitoring and enforcement measures would not remove the authority to enact such monitoring and enforcement measures from the scope of Congress's enumerated powers.

Similarly, Plaintiffs claim that the provisions they challenge are neither necessary nor proper exercises of the Taxing Power because there are "numerous [other] regulations designed to ensure that any taxes owed [on distilled spirits] are provided to the federal government[.]" Pl. Mem. at 16-17. Plaintiffs cite no evidence in support of their assertion that "the government will receive the revenue it is due" regardless of whether the 150-year old challenged provisions remain in effect. *Id.* at 17. Nor do Plaintiffs cite any precedent supporting their suggestion that Congress's power to protect the revenue on distilled spirits encompasses these other "numerous regulations" but stops short of authority to place restrictions on the locations of distilled spirit plants. *Id.* at 16. Moreover, Plaintiffs ignore the interrelationships between the challenged provisions and other components of the statutory scheme, such as 26 U.S.C. § 5203, requiring distillers to allow access to distilled spirits plant premises by federal revenue officers at any time, day or night.  In any case, again, Plaintiffs' disagreement with Congress's determination that the challenged provisions are necessary to protect the revenue is irrelevant. *See, e.g.*, *United States v. Di Santo*, 20 F. Supp. 254, 255 (N.D. Ohio 1935) ("Congress may make all laws proper for carrying into execution its powers

with respect to the collection of taxes. And where the law is not prohibited and is calculated to aid in effecting this object, the court will not inquire into the degree of its necessity." (citing *McCulloch*, 17 U.S. (4 Wheat.) 316), *aff'd*, 93 F.2d 948 (6th Cir. 1937).

*Fourth*, Plaintiffs assert that the challenged provisions are not "plainly adapted" to Congress's exercise of the Taxing Power because, in their view, the provisions "lack[ ] [an] obvious, simple, and direct relation to federal taxation[.]" Pl. Mem. at 18 (citing *Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring)). This assertion is meritless. Notwithstanding Justice Thomas's concurrence in *Sabri*, the Supreme Court has never held that a statute is "plainly adapted" to Congress's exercise of an enumerated power only if the relationship to that power is "simple" or "obvious." *Cf. Artis v. District of Columbia*, 583 U.S. 71, 90 (2018) (holding that statutory provision was "plainly adapted" to Congress's power to regulate the federal courts where "there was no cause to suspect that Congress had enacted [the provision] as a pretext for the accomplishment of objects not entrusted to it, nor was there reason to believe that the connection between [the provision] and Congress' authority . . . was too attenuated" (cleaned up)); *Case v. Bowles*, 327 U.S. 92, 102 (1946) (holding that statute imposing price maximums on timber sales was "plainly adapted" to Congress's exercise of its war power because "an absence of federal power to fix maximum prices for state sales or to control rents charged by a state might result in depriving Congress of ability effectively to prevent the evil of inflation," and "[t]he result would be that the Constitutional grant of the power to make war would be inadequate to accomplish its full purpose"). Though it might not be "obvious" to an observer how regulating the packaging of margarine, or the traffic in sawed-off shotguns, is related to the Taxing Power, courts have upheld each as a valid exercise of Congress's taxing authority. *See Sonzinsky v. United States*, 300 U.S. 506, 513 (1937) (guns); *Ripper*, 178 F. at 28 (margarine). Regardless, as explained above, the challenged provisions were enacted to protect the revenue, and thus plainly adapted to Congress's exercise of the Taxing Power.

**C.  The Challenged Provisions Were Properly Enacted Under the Commerce Clause.**

Under the Commerce Clause, U.S. CONST., art. I, § 8, cl. 3, and the Necessary and Proper Clause, U.S. CONST., art. I, § 8, cl. 18, Congress has power to regulate local activity that substantially affects interstate commerce. "[T]he power to regulate commerce is the power to enact 'all appropriate legislation' for 'its protection and advancement'; to adopt measures 'to promote its growth and insure its safety'; 'to foster, protect, control and restrain.'" *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 36-37 (1937) (internal citations omitted). The Supreme Court has squarely rejected Plaintiffs' cramped reading of the Commerce Clause, holding that "the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market," are "quintessentially economic activities" well within Congress's power. *Gonzalez v. Raich*, 545 U.S. 1, 16-17 (2005). Because this Court is powerless to overturn binding Supreme Court precedent, Plaintiffs' Commerce Clause claims must fail.

In addition to regulating "the channels of interstate commerce," "the instrumentalities of interstate commerce, and persons or things in interstate commerce," Congress may "regulate activities that substantially affect interstate commerce." *Id.* at 16-17. When Congress acts in this third category, it has the power to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17. And "[w]hen Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class." *Id.* (citation omitted). In reviewing such a determination, a court's "task . . . is a modest one." *Id.* at 22. The court "need not determine whether [the regulated] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.*

Congress comprehensively regulates the distilled spirits industry, including strict regulation and taxation of the distilling of spirits. *See, e.g.*, 26 U.S.C. § 5001 *et seq.*; 27 U.S.C. § 203 *et seq.* Distilled spirits are a multi-billion-dollar industry, *see* TTB, *Statistical Release, Tax Collections Fiscal Year 2023*, https://www.ttb.gov/images/pdfs/statistics/4thqrt/final2023.pdf (Dec. 5, 2023) (showing over seven billion dollars of distilled spirits tax revenue for fiscal year

2023), and the distilling of spirits is a quintessentially commercial activity that occurs in both interstate and foreign commerce and substantially affects interstate commerce. Congress made express findings about the interstate effects of distilled spirits when it passed the FAA Act, explaining that the Act was necessary "[i]n order effectively to regulate interstate and foreign commerce in distilled spirits, wine, and malt beverages, to enforce the twenty-first amendment, and to protect the revenue and enforce the postal laws with respect to distilled spirits." 27 U.S.C. § 203.

Thus, Congress has the power under the Commerce Clause to regulate and tax distilling activity, including regulating where and under what conditions distilled spirits may be legally distilled and taxed. Although Plaintiffs attempt to frame the challenged statutory provisions as a "ban" on home distilling, they are more accurately described as one piece of a statutory and regulatory scheme defining where distilling may and may not take place: not in homes, on boats, at breweries or wineries, 26 U.S.C. §§ 5178(a)(1), 5601(a)(6), and only on premises compliant with "regulations [prescribed by the Secretary] relating to the location, construction, arrangement, and protection of distilled spirits plants as [the Secretary] deems necessary to facilitate inspection and afford adequate security to the revenue," *id.* § 5178(a)(1)(A). Plaintiffs do not contend that Congress lacks the power to regulate distilled spirits in interstate commerce, nor do they contend that Congress lacks the power to regulate the distilling of spirits. They do not, for example, challenge numerous provisions in the FAA Act or the Internal Revenue Code and accompanying regulations that impose permitting requirements and other strict controls over the operation of distilled spirits plants. *See, e.g.*, 26 U.S.C. §§ 5171; 5173; 5178; 5179; 27 C.F.R., pt. 19.

Given the evident interstate commerce impacts of spirits and distilling, Plaintiffs focus on the artificially narrow category of "home distilling." Pl. Mem.  at 6-8. But the Supreme Court has repeatedly rejected such a myopic view of commercial activity. For example, in *Raich*, the Court held that the federal regulation of marijuana cultivated at home for personal consumption "is squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the

national market for that commodity." *Raich*, 545 U.S. at 19. The fact that a petitioner's "own impact on the market was 'trivial by itself' was not a sufficient reason for removing him from the scope of federal regulation." *Id.* at 20 (citing *Wickard v. Filburn*, 317 U.S. 111, 119, 129 (1942)). Indeed, Congress "may regulate even non-economic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Raich*, 545 U.S. at 37 (Scalia, J., concurring in the judgment) (citing *United States v. Lopez*, 514 U.S. 549, 561 (1995)).

It matters not that Plaintiffs seek to distill alcohol for purely intrastate, non-commercial use. Compl. ¶ 26. If Congress could regulate the entirely intrastate cultivation and consumption of marijuana for personal use because "marijuana that is grown at home and possessed for personal use is never more than an instant from the interstate market," *Raich*, 545 U.S. at 40 (Scalia, J., concurring in the judgment), then logically Congress can also regulate "[spirit] that is [distilled] at home and possessed for personal use," *id.*, for the same reasons. Plaintiffs' proposed home distilling activities fall into the category of "purely local activities that are part of an economic 'class of activities'" here, the economic activity of distilling spirits, "that have a substantial effect on interstate commerce" which Congress plainly has the "power to regulate." *Id.* at 17. As the Supreme Court reiterated in *Raich*, "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Id.* (quoting *Wickard*, 317 U.S. at 125).

Confronted with *Raich* and *Wickard*, Plaintiffs contend there is no federal regulation of distilling of spirits with which home distilling plants would interfere. Pl. Mem. at 10. To the contrary, there is a comprehensive excise tax framework on the distilling of spirits, calibrated to facilitate inspection and afford adequate security to the revenue, which raises billions of dollars of revenue annually. *See* 26 U.S.C. § 5178; 27 C.F.R. § 19.51, *id.* § 19.52. Plaintiffs impliedly concede that this binding Supreme Court precedent forecloses their ability to succeed on the merits. Pl. Mem. at 9 (arguing that *Wickard* was wrongly decided). This Court is powerless to overturn binding Supreme Court precedent, the Supreme Court has roundly rejected Plaintiffs' artificially narrow reading of the Commerce Clause, and thus Plaintiffs' Commerce Clause claim must fail.

## II.    Plaintiffs Have Not Demonstrated Irreparable Harm.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2013). As explained above, Plaintiffs have not demonstrated that they have suffered an injury in fact for Article III standing. *See supra* Part I.A. *A fortiori*, Plaintiffs have not made a showing of a substantial threat of irreparable harm. *See, e.g.*, *Gbalazeh v. City of Dallas*, 394 F. Supp. 3d 666, 672 (N.D. Tex. 2019) (explaining that "establishing that there is a substantial threat of irreparable injury on a motion for preliminary injunction is a much taller task than showing injury-in-fact to survive a motion to dismiss"). The cases Plaintiffs cite to support their assertion of irreparable harm are inapposite: these cases involved threats of discharge from public employment based on an exercise of First Amendment rights, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); a threat that, in the absence of a stay, plaintiffs would suffer loss or suspension of employment and adverse "business and financial effects" due to their exercise of a liberty interest, *BST Holdings, LLC v. OSHA, U.S. Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021); and a "threat of looming civil and criminal liability" under a regulation the court "ha[d] already deemed likely unlawful," *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 857 (N.D. Tex. 2022), *appeal dismissed*, No. 22-11071, 2023 WL 7318088 (5th Cir. Sept. 6, 2023). But even if Plaintiffs could clear the standing hurdle, they have not demonstrated that they likely will suffer an irreparable injury absent a preliminary injunction.

*First*, Plaintiffs waited for years to file suit to challenge the statutory provisions at issue, and even longer before seeking preliminary injunctive relief. Several courts, including courts in the Fifth Circuit, recognize that delays "militate[] against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 799 (M.D. La. 2018); *see also, e.g.*, *Glob. Oil Tools, Inc. v. Expeditors Int'l of Wash., Inc.*, Civ. A. No. 16-16372, 2018 WL 263233, at *3 (E.D. La. Jan. 2, 2018) (same); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (explaining

20

that "[a] delay in seeking a preliminary injunction of even only a few months … militates against a finding of irreparable harm. . . .  Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits," and collecting cases (citations omitted)); *Texas v. United States*, 328 F. Supp. 3d 662, 738–39 (S.D. Tex. 2018) (same). In this case, Plaintiffs brought suit in December 2023 to enjoin the government's enforcement of an 1868 law to which at least three Plaintiffs have objected for several years,[7] and then waited a further three months after filing suit to move for preliminary injunctive relief. This delay alone belies any argument that Plaintiffs are facing irreparable harm justifying imposition of such an extraordinary remedy.

*Second*, there are multiple impediments, beyond the challenged statutory provisions, to the home distilling activities Plaintiffs seek to undertake. While Plaintiffs claim that they are being injured because 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6) prohibit home distilling, Compl. ¶ 26, they admit that their ability to lawfully distill spirits at home is also restricted by other federal, state, and local laws and regulations. *Id.* ¶ 32; Pl. Mem. at 24; Morris Decl. ¶ 15; McNutt Decl. ¶¶ 11-12; Prince Decl. ¶ 7; Cowdrey Decl. ¶ 6; *see, e.g.*, 27 U.S.C. § 204 (federal permit requirements); 27 C.F.R. §§ 1.24, 19.52, 19.53, 19.188, 19.192 (same); *see also* 27 C.F.R. §§ 19.73-19.77 (requiring submission of information concerning, among other things, building layout and security, operations to be performed, and equipment descriptions). Plaintiffs do not allege, let alone present evidence, that they can satisfy these other requirements.

---

[7] This has been publicly reported. *See* Bill Lohmann, *Lohmann: Is it Time to Legalize Homemade Booze?*, RICHMOND TIMES-DISPATCH, Feb. 26, 2017, https://richmond.com/lohmann-is-it-time-to-legalize-homemade-booze/article_34a7ffdc-5305-57fc-9b07-33dc1fbab4f6.html (reporting statements by Plaintiff Thomas Cowdrey III); WXYZ Detroit, *Banned Booze: A look at moonshining in Michigan and the effort to legalize home distilling*, Jan. 27, 2017, https://www.wxyz.com/news/banned-booze-a-look-at-moonshining-in-michigan-and-an-effort-to-legalize-home-distilling (mentioning lobbying by Plaintiff Hobby Distillers Association for passage of the Craft Beverage Modernization and Tax Reform Act);  dallasnews Administrator, *Home Moonshiners Sip Quietly Under the Radar in the Dallas Area*, THE DALLAS MORNING NEWS, Sept. 21, 2013, https://www.dallasnews.com/news/2013/09/22/home-moonshiners-sip-quietly-under-the-radar-in-dallas-area/ (reporting statements by Plaintiff Rick Morris).

*Third*, Plaintiffs have not demonstrated that a preliminary injunction would save them from any purported harm they might suffer awaiting a final judgment on the merits. Plaintiffs affirm their interest in distilling spirits at home, and indicate that they will eventually do so if the Court enjoins the challenged statutory provisions *and* Plaintiffs acquire all necessary equipment and permits. Pl. Mem. at 24 (injunction will allow Plaintiffs to "start acquiring the federal permits necessary," and "would not cause the Plaintiffs to begin distilling immediately"); *see* Morris Decl. ¶ 14; McNutt Decl. ¶ 11; Prince Decl. ¶ 7; Cowdrey Decl. ¶ 6. But even if the Court issued a preliminary injunction and Plaintiffs immediately acquired necessary equipment, applied for and received all necessary state and local permits, and applied for the necessary federal permits, no legal provision imposes a deadline for the Secretary to grant or deny such applications, which would need to be thoroughly evaluated.  Any action by the Secretary might not come prior to the Court's issuance of a final judgment.

Thus, Plaintiffs have not established that they face a substantial threat of irreparable harm in the absence of a preliminary injunction.

## III.   The Public Interest and Balance of Equities Weigh Against Granting a Preliminary Injunction.

The remaining two preliminary injunction factors merge where, as here, the government is a party. *Nken,* 556 U.S. at 435. The public interest is not served by issuing the preliminary injunction requested by Plaintiffs. Congress intentionally created a statutory scheme designed to ensure spirits are only distilled on certain premises to address potential tax evasion and afford adequate security to the revenue. "Whenever called upon to judge the constitutionality of an Act of Congress—'the gravest and most delicate duty that [a court] is called upon to perform'—the Court accords 'great weight to the decisions of Congress." *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (citations omitted). The Government has an important interest in promptly securing the collection of internal revenue and preventing tax evasion. *Fuentes v. Shevin*, 407 U.S. 67, 90-92 & n.24 (1972); *see also Lange v. Phinney*, 507 F.2d 1000, 1003 (5th Cir. 1975) (noting the Government's interest in the "prompt collection of its lawful revenue"). "For better or worse,

'taxes are the lifeblood of government, and their prompt and certain availability an imperious need.'" *Seminole Nursing Home, Inc. v. Comm'r of IRS*, 12 F.4th 1150, 1154 (10th Cir. 2021) (quoting *Bull v. United States*, 295 U.S. 247, 259 (1935)). Congress already balanced the public interests when it determined that permitting distilling of spirits only on properties that afford adequate protection of the revenue was a greater public interest than allowing distilling in homes or dwellings. Especially in the face of Plaintiffs' failure to demonstrate a threat of irreparable harm, that balance counsels against granting Plaintiffs' motion. *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609-10 (1952) (Frankfurter, J., concurring) ("When Congress itself has struck the balance, has defined the weight to be given the competing interests, a court of equity is not justified in ignoring that pronouncement under the guise of exercising equitable discretion.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: March 21, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

/s/ *Elizabeth Tulis*
ELIZABETH TULIS
HANNAH SOLOMON-STRAUSS
ANNA DEFFEBACH
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 514-9237
elizabeth.tulis@usdoj.gov