# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| Hobby Distillers Association, Rick Morris, Thomas O. Cowdrey III, Scott McNutt, John Prince III<br><br>        Plaintiffs,<br><br>    v.<br><br>Alcohol and Tobacco Tax and Trade Bureau, a bureau of the U.S. Department of the Treasury; Department of Justice<br><br>        Defendants. | Case No. 4:23-cv-1221-P |

### Reply in Support of Motion for Preliminary Injunction

Devin Watkins (D.C. Bar # 155179)
Dan Greenberg (D.C. Bar # 9008067)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L St. NW, 7th Floor
Washington, D.C. 20005
(202) 331-1010
Devin.Watkins@cei.org
Dan.Greenberg@cei.org

**GRIFFITH BARBEE PLLC**
Casey Griffith (Texas Bar No. 24036687)
Casey.Griffith@griffithbarbee.com
Nicholas Kliewer (Texas Bar No. 24083315)
nick.kliewer @griffithbarbee.com
One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020| main
(214) 446-6021| fax

*Counsel for Plaintiffs*

Plaintiffs have asked this Court to issue a preliminary injunction. In their response, Defendants argue that Plaintiffs merely have "policy disagreements" over measures "Congress could have taken." Resp. Br. 1. This is not so. Plaintiffs' suit is about the reach of federal constitutional power, and courts—not legislatures—resolve such disputes. No Plaintiff here "asks the Court to substitute itself for Congress," Resp. Br. 13. "[T]he Framers adopted a written Constitution that further divided authority at the federal level so that the Constitution's provisions would not be defined solely by the political branches nor the scope of legislative power limited only by public opinion and the Legislature's self-restraint." *United States v. Morrison*, 529 U.S. 598, 616 n.7 (2000) (citing *Marbury v. Madison*, 5 U.S. 137, 176 (1803)). "No doubt the political branches have a role in interpreting and applying the Constitution, but ever since *Marbury* this Court has remained the ultimate expositor of the constitutional text." *Id.* Plaintiffs only ask this Court to perform its proper constitutional role: authoritative constitutional interpretation.

## I.    Plaintiffs Have Article III Standing

Plaintiffs aren't required to initially establish standing if they have "a good-faith (though mistaken) belief that standing would be both undisputed and easy to resolve." *Ctr. for Biological Diversity v. United States Env't Prot. Agency*, 937 F.3d 533, 542 n.4 (5th Cir. 2019). Below, Plaintiffs explain why their good-faith belief (whether mistaken or not) passes this test.

Hobby Distillers Association has associative standing through its members, as this suit is germane to its purpose. Previously filed declarations demonstrate Plaintiffs, who are members of the Hobby Distillers Association, intend to engage in the currently prohibited conduct of at-home distilling as soon as they can do so lawfully. Memo in Support of Motion for Preliminary Injunction (hereinafter "Opening Br.") Appendix 1-9. Until Plaintiffs receive the federal permit that has been unlawfully withheld from them, their intentions to distill at home are foiled. Once Plaintiffs receive the federal permit, they will then need to pursue various state permits before

1

distilling, but the granting of such state permits can't be considered until the federal permit is issued. Nothing in state law prevents Plaintiffs from distilling once they acquire the necessary federal permit (the text Defendants supply from the Texas Beverage Code only applies to "illicit beverages," and lawfully distilled beverages aren't illicit). If this Court issues the preliminary injunction, Plaintiffs will begin to acquire the necessary permits to begin distilling at home as quickly as possible. The harms to the Plaintiffs' liberty are entirely caused by and traceable to Defendants' refusal to consider their permit requests, and an injunction would redress those harms.

There's a good reason why (as Defendants note, Resp. Br. 5 (relying upon the declaration of Frank Johnson)) Plaintiffs hadn't filed for permits. It's because Plaintiffs, through their attorney, asked the Defendants over the phone if they would consider such an application; Defendants immediately answered that they would not. Complaint ¶ 24; Appendix 3. This "requirement for standing may be excused, however, when a plaintiff makes a 'substantial showing that application for the benefit ... would have been futile.'" *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)).

Pre-enforcement review is not confined to narrow portions of the First, Second, or Fifth Amendments, despite defendants' claim to the contrary. Resp. Br. 7. Consider *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 199 (5th Cir. 2021), in which Cochran sought pre-enforcement review on due process and removal-power grounds, but then abandoned her due process challenge. Even when the case was stripped of its due process claim, the Fifth Circuit held:

> "Congress gave federal district courts jurisdiction over '*all* civil actions arising under the Constitution.' 28 U.S.C. § 1331 (emphasis added). Not some or most—but all. It is undisputed that [Plaintiff's] removal power claim arises under the Constitution. Moreover, the Supreme Court has repeatedly told us that 'when a federal court has jurisdiction, it also has a 'virtually unflagging obligation ... to exercise that authority.'"

20 F.4th 194, 199 (5th Cir. 2021).

Here, Plaintiffs are simply arguing that their liberty is being unconstitutionally foiled by

2

unconstitutional statutes. The right to be free from the dictates of unconstitutional statutes is unambiguously "affected with a constitutional interest."

In their most startling claim, Defendants argue that Plaintiffs face no "credible threat of prosecution." Resp. Br. 9-10. This Court should examine this literally self-refuting claim in light of the threat of prosecution on Defendants' very own website, https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling, as noted in Plaintiffs' previously filed memorandum. The threat's credibility is magnified by the letter Defendants sent to Plaintiff Scott McNutt threatening him with prosecution. *See* Appendix 1-2.

## II.      The At-Home Distilling Ban Is Not a Reasonable Exercise of the Taxing Power, as Demonstrated by, *inter alia*, *NFIB v. Sebelius.*

Plaintiffs argued that the at-home distilling ban was improper under the explication of the taxing power in *NFIB v. Sebelius* (2012). In response to this argument, Defendants stood mute. In *Sebelius,* the Supreme Court held that "the taxing power does not give Congress the same degree of control over individual behavior" as the Commerce Clause and that "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." 567 U.S. 519, 574. Defendant's sole citation to *Sebelius*, in footnote 6, attempts to argue that the federal government can lawfully ban anything it can tax; notably, this proposition cannot be reconciled with what *Sebelius* actually held.

Defendants flourish older cases and lower court opinions to intimate that *Sebelius* is wrong. But, as we all know, older and lower court cases cannot invalidate a newer Supreme Court decision. (This would be true even if those cases were on point. They are not.) In short, *Sebelius* demonstrates that the at-home distillery ban is not a proper exercise of the taxing power—even if it could be demonstrated to be necessary.

There are other reasons that the Defendants' taxing power argument cannot stand. Of course it is indisputable that, as Defendants recite at some length, Congress may pass laws that serve as reasonable means to protect the revenue owed from and paid by federal taxation. What Plaintiffs dispute is that the at-home distilling ban falls into this category. Of course there are multitudes of statutes that are reasonable means of protecting revenue. This fact doesn't demonstrate that the at-home distilling ban is one of those statutes.

Defendants recount the findings of a congressional committee investigating the avoidance of paying taxes on distilled spirits, but that investigation is unconnected to the at-home distilling ban. Indeed, Congress enacted many measures properly designed to protect federal revenue on distilled spirits in the Act Imposing Taxes on Distilled Spirits and Tobacco and For Other Purposes, 15 Stat. 125. The committee report never even suggested that the at-home distillery ban was necessary to protect revenue. The only time that the committee report discusses a home-based distillery is in the larger context of a discussion of public bribery and corruption. Appendix 32-33. Legislative silence on revenue protection here is anything but persuasive.

But even if Congress had expressly announced that at-home distilling caused a diversion of revenue, that announcement wouldn't prove the theory to be true: Congress cannot unilaterally establish the nature of its own constitutional powers. Consider the analogous circumstances of Commerce Clause powers: "[S]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so." *United States v. Morrison*, 529 U.S. 598, 614 (2000) (quoting *United States v. Lopez*, 514 U.S. 549, 557 (1995)). Furthermore, even if a congressional committee had found the at-home distilling ban to be necessary to preserve revenue, that would not be given the weight of a Congressional finding that was actually written into the statutory text "for the simple reason that [it is] not law." *United States*

4

*v. Nazerzadeh*, 73 F.4th 341, 347 (5th Cir. 2023). Of course, retrospective hypothesizing by Defendants' lawyers should receive even less weight.

To rest their defense on the taxing power, what Defendants must do—just to make it out of the starting gate—is provide a rational account of why the home-distilling ban prevents revenue loss. They have not done so. Instead, they cite the Supreme Court in *United States v. Ulrici*, 111 U.S. 38, 40 (1884), to the effect that the "regulations for the manufacture and storage, the marking, branding, numbering, and stamping with tax stamps of distilled spirits" were enacted to protect revenue. Of course we all agree that many of those statutory provisions were properly enacted to protect revenue; that is why they are not at issue here. However, the *Ulrici* Court never evaluated the at-home distilling prohibition, nor is there any reason to infer that the Court examined it.

With respect to taxes on beer, wine, and fuel, Defendants intently criticize an argument that has not been made: the point is *not* that different regulatory schemes for different things are unreasonable as such. Instead, Plaintiffs contend that the absence of diversion of such revenue from beer and wine home production suggests that, by analogy, there are no real diversion concerns for similarly situated spirits either. The same point stands for fuel production: if it can be produced at home (regardless of whether a waiver is needed), there is no diversion problem in that case. Of course we all agree that Congress may attach varied revenue schemes to the production of varied products, but it must do so rationally: constitutionally, there is barren ground for two *different* revenue collection schemes for two chemically *identical* products with two *identical* production processes. Defendants claim that there are "distinct features of the excise tax on distilled spirits that make diversion or concealment of the revenue particular risks." Resp. Br. 15. This claim is empty. What are those distinct features? Why are they particularly risky? Defendants don't say. Here is the relevant question: Would a rational person believe that at-home distillation carries such

5

distinct features of increased risk of diversion that the prohibition is necessary? The government must carry its burden of providing a reason or justification that a reasonable person could accept—and it has failed to do so.

Plaintiffs have already listed the numerous statutory provisions designed to protect the government's revenue. Opening Br. 17. These provisions serve as evidence that the government's revenue will remain secure in the absence of the home distilling ban. If the government's at-home distilling ban adds nothing to the ability of other provisions' protection of revenue, it is not necessary and thus beyond the power of Congress. The federal action at issue is simply not calculated to aid in revenue collection.

Defendants reject Justice Thomas's understanding of "plainly adapted," as an "obvious, simple, and direct relation" to the federal power; instead, they cite *Artis v. District of Columbia*, 583 U.S. 71, 90 (2018), to the effect that the connection must not be "too attenuated." Such bickering misses the point: either gloss will do. Here is what is crucial: it is the inescapable job of the Court to examine how closely the authority at issue in this case is joined to the enumerated constitutional power that the at-home distillery ban must implement. How is the ban "plainly adapted" to the federal power? For instance: why, if there's a still on the domiciliary parcel that is several miles away from the home, there's apparently a federal interest, but if there's a still on a second and separate parcel a few yards away, there's apparently no federal interest? Defendants don't say. The bottom line is that Defendants must show a substantial connection between the exercise of the federal taxing power and the at-home distillery ban, and they have not and cannot do so.

Ultimately, Defendants' position inescapably implies—as Plaintiffs noted previously—"an astonishing and unprecedented expansion in the scope of federal power." Opening Br. 13.

Defendants complain that this argument "attacks a strawman." Resp. Br. 13. The charge that Plaintiffs have conjured up a strawman is bold, given Defendants' adoption of the strawman's position two sentences later. Resp. Br. 13 note 6.

### III.    Defendants Provide No Interstate Commerce Regulation That Is Undercut.

Defendants note that Congress can only regulate a "practice [when it] poses a threat to a national market," Resp. Br. 17, and it may regulate "if that regulation is a necessary part of a more general regulation of interstate commerce." Resp. Br. 19. The parties agree on these ground rules. But that consensus invites a question: What is the general regulation of interstate commerce of which the prohibition of at-home distilling is a necessary part? Defendants provide a remarkable answer: taxation. Resp. Br. 19. This response mixes up the commerce power with the taxing power. Defendants can't bootstrap Commerce Clause authority on anything that can be taxed. Commerce Clause powers are circumscribed by the classic triad of the regulation of channels of interstate commerce, the instrumentalities of interstate commerce, and, through the Necessary and Proper Clause, the activities that substantially affect interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005). The exercise of the Commerce Clause in this area can only be justified by some sort of interstate commerce regulation that is undercut by the practice of at-home distillery. Taxation is not a regulation of interstate commerce, and so it simply does not qualify as a justification for the banning of at-home distillation under the Commerce Clause.

While Congress could implement a future statute concerning the interstate sale of distilled spirits that could then require a prohibition on at-home distilling, no such interstate commerce regulation exists today to justify the local prohibition. As Plaintiffs noted in their opening memorandum, Congress has banned the interstate sale of marijuana, and it is that interstate regulation that the Supreme Court points to in *Raich* to justify the local prohibition. There is no analogous example for distilled spirits.

In short, Plaintiffs respectfully suggest that efforts to shoehorn taxing power justifications into the boot of the general regulations supported by the Commerce Clause power must inherently fail. Even if it were true that a law against at-home distillery *that rested on the taxing power* would "be necessary and proper for carrying into execution" a constitutional power, it is jaw-dropping for Defendants to argue that the locus of power here would not be the taxing power, but rather that the locus of power has somehow migrated to the Commerce Clause.

## IV.    Plaintiffs Have Demonstrated Irreparable Injury

As Plaintiffs noted in their opening brief, the Fifth Circuit has defined an irreparable injury as "one that cannot be undone by monetary damages or one for which monetary damages would be 'especially difficult to calculate.'" *Heil Trailer Int'l Co. v. Kula*, 542 Fed. Appx. 329, 335 (5th Cir. 2013). This rule remains uncontroverted by Defendants' brief, which fails to provide any reason why monetary damages could undo Plaintiffs' injuries.

Defendants complain that Plaintiffs waited too long to file suit or seek preliminary injunctive relief. That is an eyebrow-raising argument about a statute that is over 150 years old: would Plaintiffs have a stronger case if they had filed as infants? Delays are relevant to an assessment of the seriousness and imminence of the harm at issue, not to an assessment of whether Defendants can be made whole through money damage awards. The harm to Plaintiffs' liberty is already ongoing, and a violation of the Constitution is about as serious as any harm can be, whether there is delay or not. This litigation is still in its infancy; Defendants have yet even to file a response to the complaint, and as such, the injunction should still be issued.

Plaintiffs' claim rests neither on theories of procedural due process nor substantive due process. Here, Plaintiffs rely on the Fifth Amendment: not to show that the statutes in question are unconstitutional, but merely to show that the harm Plaintiffs now suffer is irreparable. If the Court accepts Plaintiff's arguments that the statute is unconstitutionally beyond the powers of Congress,

then those statutes cannot be part of "the supreme law of the land." "Textually, the Due Process of Law Clauses use four words, not two: the 'due process of law' requires that no person could 'be deprived of life, liberty, or property,' except by an act of a legislature that constitutes a 'law.'" Randy E. Barnett & Evan D. Bernick, *No Arbitrary Power: An Originalist Theory of the Due Process of Law*, 60 Wm. & Mary L. Rev. 1599, 1622 (2019). Thus, Plaintiffs are harmed by federal actions outside the scope of the "due process of law" required by the Fifth Amendment which is irreparable. *See BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021); *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In short, Plaintiffs argued that certain federal actions were illegal *in their complaint* and then argued that the harm they suffered was irreparable *in their motion for a preliminary injunction*.

Defendants claim that, regardless of the federal prohibition, there are state prohibitions that would also limit Plaintiffs' ability to distill: from this, Defendants thus argue that the federal prohibition is not causing Plaintiffs harm. However, there are no state prohibitions that would prevent Plaintiffs from being able to distill, but for the federal permit requirement (at least the Defendants do not identify any). Of course Plaintiffs would still need to acquire a state permit, but they cannot even begin that process until a federal permit has been issued. Plaintiffs do not have to allege that the states will grant such a permit, merely that it is only the federal permit currently is the only barrier to Plaintiffs taking any further actions to be able to do so.

The Secretary of the Treasury is required by law to avoid unreasonable delay in issuing or denying the permit to distill, and a court could order an end to any such delay. 5 U.S.C. § 706. Indeed, any agency action might not come before final judgment, but if, for example, it takes five years to issue the permit and three to come to final judgment, then the process of issuing the permit will still travel three more years along the five-year road of being approved.

9

It bears repeating that Plaintiff's harms are irreparable because Plaintiffs do not ask and cannot ask for monetary damages given the nature of sovereign immunity. *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

**V.      The Preliminary Injunction Motion Should Be Granted**

Plaintiffs have shown they have standing: their liberty is being restricted by unconstitutional statutes under threat of prosecution. Defendants have grimly ignored the roadblock to their taxing power theory: *NFIB v. Sebelius*. Defendants have failed to identify any regulation of interstate commerce that would be undercut, which means they have lost the key to the Commerce Clause's ignition. Defendant's arguments concerning irreparable harm are irrelevant to the Fifth Circuit's precedent, which rests on whether the harms can be undone by monetary damages. In short, Defendants have provided no valid reason why the motion for a preliminary injunction should not be granted.

Dated: March 26, 2024                             Respectfully submitted.

*/s/ Devin Watkins*                               **GRIFFITH BARBEE PLLC**
Devin Watkins (D.C. Bar # 155179)                 Casey Griffith (Texas Bar No. 24036687)
Dan Greenberg (D.C. Bar # 9008067)                Casey.Griffith@griffithbarbee.com
COMPETITIVE ENTERPRISE INSTITUTE                  Nicholas Kliewer (Texas Bar No. 24083315)
1310 L St. NW, 7th Floor                          Nick.Kliewer@griffithbarbee.com
Washington, D.C. 20005                            One Arts Plaza
(202) 331-1010                                    1722 Routh St., Ste. 710
Devin.Watkins@cei.org                             Dallas, Texas 75201
Dan.Greenberg@cei.org                             (214) 446-6020| main
                                                  (214) 446-6021| fax

*Counsel for Plaintiffs*

10

**CERTIFICATE OF SERVICE**

I certify that on March 26, 2024, I served this document through CM/ECF upon the

Defendant's Counsel.

/s/ Devin Watkins

DEVIN WATKINS

*Counsel for Plaintiffs*