IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **HOBBY DISTILLERS ASSOCIATION,** *et al.*, ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br>     v. ) <br> ) <br> **ALCOHOL AND TOBACCO TAX AND** ) <br> **TRADE BUREAU,** *et al.*, ) <br> ) <br>     **Defendants.** ) | **Case No. 4:23-cv-01221-P** |

**SUR-REPLY IN FURTHER RESPONSE TO PLAINTIFFS'**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Defendants respectfully submit this sur-reply to address statements made, authorities cited, and materials submitted in Plaintiffs' reply in support of their motion for preliminary injunction.

## ARGUMENT

### I. Plaintiffs Mischaracterize the Materials Submitted with Their Reply.

In an appendix to their reply and by manual filing following the March 28, 2024, hearing, Plaintiffs have submitted new evidentiary materials that they describe as containing a threat of prosecution, Pls. Reply in Supp. of Mot. for Prelim. Inj. at 3, ECF No. 31 ("Reply"), and a denial of consideration of an application for a distilled spirits plant permit, *id.* at 2. Plaintiffs mischaracterize these materials, which consist of (1) a generic letter sent by TTB in 2014 to individuals who had purchased stills and an attached press release about a federal-state operation targeting illegal distilling activities; and (2) an audio recording of a call placed by Plaintiffs' counsel to TTB's Call Center.

First, item (1), the 2014 letter sent to Mr. McNutt, is not a threat of prosecution, let alone a threat of prosecution for engaging in conduct proscribed by 26 U.S.C. § 5601(a)(6)—the sole criminal provision challenged in this case. The letter and attached press release make no mention of § 5601(a)(6) or the restriction on locating a distilled spirits plant in a dwelling house or shed, yard, or inclosure connected with a dwelling house. Rather, the generic letter states that it has come to TTB's attention that the recipient "may have purchased a still capable of producing alcohol and/or equipment and materials that may be used in the manufacture of a still." Reply App'x 1, ECF No. 31-1 ("Reply App'x"). It observes that "[u]nlawful production of distilled spirits is a criminal offense," and notes that there are no "exemptions for the production of distilled spirits for personal or family use." *Id.* While Plaintiffs in this case object to one of the location restrictions applicable to distilled spirits plants, they do not challenge the numerous other restrictions on production of distilled spirits that carry criminal penalties, *see generally* 26 U.S.C. § 5601, nor do they claim that there should be an exemption from these provisions for personal or family use.

In any case, in noting the potential for criminal liability for unlawful production of distilled spirits and related Internal Revenue Code violations, the letter, like the TTB website cited by

Plaintiffs, *see* https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling (cited in Reply at 3), merely summarizes the law. As explained by TTB, in March 2014, TTB conducted a joint operation with special agents from the Florida Division of Alcoholic Beverages and Tobacco, targeting the illegal possession of stills and the illegal production of distilled spirits. Decl. of Robert M. Angelo ("Angelo Decl.") ¶ 2 (App'x 1-2). No federal criminal charges were filed, and the operation did not lead TTB to initiate any federal enforcement actions or criminal investigations. *Id.* ¶¶ 2, 3. However, in connection with the operation, TTB identified more than 8,000 individuals, including Mr. McNutt, who had purchased stills, and sent letters informing these purchasers of the potential legal consequences associated with the illegal production of distilled spirits, attaching copies of the TTB press release concerning the joint operation. *Id.* ¶ 5 (App'x 2-3); *see* Reply App'x 1-2. TTB took no action against Mr. McNutt in connection with this letter, Angelo Decl. ¶ 5 (App'x 3), and, indeed, Mr. McNutt does not allege that he received any follow-up communication from TTB regarding the issues addressed in the letter. Further, Plaintiffs offer no evidence that the mailing sent to Mr. McNutt a decade ago caused him or any other Plaintiff to desist from any distilling activities. To the contrary, around the time the letter and press release were sent out, Mr. McNutt successfully registered his still with TTB, a registration which remains effective. Pl. App'x 4, ECF No. 17-2; Decl. of James C. Ebert ("Ebert Decl.") ¶ 7 (App'x 5).

Second, contrary to Plaintiffs' suggestion, Reply at 2, the phone call cited by Plaintiffs did not comprise a decision by TTB to refuse consideration of any distilled spirits plant permit application, let alone an application submitted or prepared by any of the Plaintiffs. As the recording reflects, Plaintiffs' counsel contacted TTB's Call Center, *see* ECF No. 34; Ebert Decl. ¶¶ 13-14 (App'x 6), and asked a general question: "My clients are interested in getting a permit to distill alcohol at home. … Is that something TTB would consider?" In attempting to answer that question, the staff-level Call Center Specialist echoed the language of TTB's regulations implementing 26 U.S.C. § 5178(a)(1)(B), which state that a distilled spirits plant may not be located in a "residence." 27 C.F.R. § 19.52. Counsel then asked, "Do you allow alcohol to be distilled for fuel purposes at home?" Whether the Call Center Specialist was unclear on the thrust of the attorney's question or

uncertain of the correct answer, he responded tentatively, saying, "well, is it a residential area?" and then, "*I believe*, like, an alcohol fuel plant permit can be issued, but … *I want to say* it has to be in a rural area …" (emphasis added). As is self-evident from the recording, this informal conversation with a TTB employee did not convey official agency guidance regarding the scope of a particular statutory provision or a determination regarding the application of that provision to a specific set of facts. Indeed, Call Center Specialists do not make final determinations or decisions regarding permit applications or tax matters. Ebert Decl. ¶ 11 (App'x 6).

II. **It Is Plaintiffs' Burden To Establish Article III Standing.**

As this Court has previously noted, "[a]lleging that a law is unconstitutional does not remove a plaintiff's burden to establish standing to challenge it." *Paxton v. Restaino*, No. 4:22-CV-0143-P, 2023 WL 4614124, at *3 (N.D. Tex. July 18, 2023) (citing *Henschen v. City of Houston*, 959 F.2d 584 (5th Cir. 1992)), *appeal filed sub nom. Colmenero v. Dettelbach*, No. 23-10802 (5th Cir. Aug. 7, 2023). Plaintiffs' assertion that they are not "required to initially establish standing if they have 'a good-faith (though mistaken) belief that standing would be both undisputed and easy to resolve,'" Reply at 1, is baseless. Indeed, the opinion cited by Plaintiffs in support of this assertion, *Center for Biological Diversity v. EPA*, 937 F.3d 533 (5th Cir. 2019), says nothing of the sort. In the quoted footnote, the Fifth Circuit merely explained why it was reluctant to deem the petitioners to have forfeited all standing arguments raised on appeal. *See id.* at 542 n.4. The court explicitly noted that if a petitioner or plaintiff "invokes federal jurisdiction," it "therefore 'bears the burden of establishing' standing." *Id.* at 536 (alteration omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Moreover, since the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, if a court has advanced the trial on the merits, consolidating it with a preliminary injunction hearing, a plaintiff must offer "evidence of actual injury." *Zimmerman v. City of Austin*, 881 F.3d

3

378, 388 (5th Cir. 2018); *see Walker v. City of Mesquite*, 169 F.3d 973, 978 (5th Cir. 1999) ("In a case that has proceeded to final judgment, the factual allegations supporting standing (if controverted) must be supported adequately by the evidence adduced at trial."). To prevail on the merits, Plaintiffs cannot now rely on mere allegations to establish standing.

### III. Plaintiffs Have Not Established an Injury in Fact.[1]

Plaintiffs expressly concede that Congress may properly take measures to "protect the revenue" on distilled spirits, Reply at 4, and they raise no objection to Congress's regulation of distilled spirits plants generally. For instance, Plaintiffs do not challenge the prohibitions on unregistered stills, 26 U.S.C. § 5601(a)(1), on producing distilled spirits when not authorized by law to do so, *id.* § 5601(a)(8), on distilling after having received a notice of suspension, *id.* § 5601(a)(14), and on engaging in the business of distilling spirits without a "basic permit," 27 U.S.C. § 203(b)(1). Nor do Plaintiffs object to any particular action by TTB or the Department of Justice. Rather, Plaintiffs' claim in this case is limited to a challenge to two provisions of the Internal Revenue Code that limit the permissible locations for distilled spirits plants, 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6). Thus, to establish an injury in fact, Plaintiffs must prove "a realistic danger of sustaining a direct injury as a result of the … operation or enforcement" of § 5178(a)(1)(B) or § 5601(a)(6). *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). That injury must be "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation omitted); *see Paxton*, 2023 WL 4614124, at *3 ("To sue, a plaintiff must be concretely injured by the law they seek to challenge." (citing *Whitmore v. Arkansas*, 495 U.S. 149 (1990))). Plaintiffs have not met their burden.

### A. Plaintiffs Have Not Proven an Injury in Fact Based on § 5178(a)(1)(B).

As Plaintiffs do not dispute, § 5178(a)(1)(B) imposes no criminal or civil penalties, and instead merely sets forth one of the "qualification requirements" applied by TTB when it evaluates

---

[1] As previously noted, Def. Br. at 10 n.5, if home distilling is illegal under applicable state or local laws, Plaintiffs also cannot establish traceability or redressability. While Plaintiffs state in their reply that "[n]othing in state law prevents Plaintiffs from distilling once they acquire the necessary federal permit," Reply at 2, they cite no evidence or authorities in support of this assertion.

applications for distilled spirits plant registrations and permits. Br. in Supp. of Defs.' Resp. to Mot. for Prelim. Inj. at 2-3, 13, ECF No. 30 ("Def. Br."). While Plaintiffs take issue with this requirement, they do not allege—or present any evidence—that it has been applied to them, or will imminently be applied to them, in a way that causes injury.

First, contrary to Plaintiffs' assertion, no federal distilled spirits plant permit has been "withheld from them," Reply at 1, because they have not applied for and been denied any such permit. Def. App'x 4 (Johnson Decl. ¶ 15), ECF No. 30-1; *see generally* Pl. App'x, ECF No. 17-2. Nor have Plaintiffs presented evidence demonstrating they even are prepared to apply—or ever will apply—for the federal permits that they concede are necessary prerequisites for their proposed distilling activities. As noted in Defendants' response, to apply for the necessary registrations and permits, Plaintiffs would be required to provide, among other things, detailed information about their distilling equipment and the layout and security of the premises for their proposed distilling operations. *See* 27 C.F.R. §§ 19.73-19.77 (requiring submission of information concerning, among other things, building layout and security, operations to be performed, and equipment descriptions). No individual Plaintiff has described with specificity where he would locate his prospective distilled spirits plant, or provided evidence that he has obtained the required equipment and materials and is prepared to submit the detailed application necessary to register a still and obtain a federal distilling permit. Further, Plaintiffs provide no evidence whatsoever about any purported plans or preparations by other Hobby Distillers Association members. Individual Plaintiffs' promises to follow all legal requirements before they begin distilling, Pl. App'x 2, 4, 6, 8, ECF No. 17-2, underscore the vagueness of their plans and the absence of any present case or controversy. *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Second, because Plaintiffs have offered no evidence of what their prospective permit applications would comprise, such as descriptions and diagrams of the proposed locations for their proposed distilled spirits plant operations, they have not proven even a potential danger of

5

suffering a "direct injury" due to the statute's operation or enforcement. *Babbitt*, 442 U.S. at 298. While Plaintiffs have stated that they have an interest in distilling spirits "at home," Reply at 2; Compl. ¶ 26, their complaint reflects an apparent misunderstanding of the scope of the challenged statutory provisions, which, in relevant part, merely prohibit locating a distilled spirits plant in a dwelling house or in a shed, yard, or inclosure connected with a dwelling house. *Compare* 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6), *with* Compl. ¶ 55 (asserting that the relevant laws "require[ ] that the still is not on the same property as the dwelling"). Indeed, Plaintiff Scott McNutt previously was granted a TTB permit to operate an alcohol fuel plant ("AFP") on a property that also contains a residence. Pl. App'x 4, ECF No. 17-2. As noted in Defendants' response, and contrary to Plaintiffs' suggestion, AFPs are subject to the same location restrictions as distilled spirits plants generally. Def. Br. at 14. In sum, Plaintiffs presume that the statute includes language that it does not, and if Plaintiffs actually applied for federal permits to distill beverage alcohol, TTB might well approve some or all of those applications.

Plaintiffs contend that their failure to file permit applications should not preclude them from establishing standing, arguing that their counsel's phone call to the TTB Call Center showed that such applications would be futile. Reply at 2. But the vague questions by counsel and tentative answers by the TTB employee during that call, *see supra* Part I, establish neither that Plaintiffs are ready and able to apply for distilled spirits plant permits nor that TTB necessarily would deny such hypothetical applications. The discussion of futility in *Ellison v Connor*, 153 F.3d 247 (5th Cir. 1998) (cited in Reply at 2), is thus inapposite. In *Ellison*, which notably did not involve a constitutional challenge to a statute, (i) the plaintiffs had actually engaged in conduct subject to the challenged policy—building a structure on a certain property; (ii) the agency had informed the plaintiffs that the structure required a permit; and (iii) in response to a written request by the plaintiffs for such a permit, the agency sent them a letter "specifically stating that it would not permit the construction or placement of any structures on their land." 153 F.3d at 250, 255. Here, Plaintiffs have neither engaged in conduct implicated by the challenged statutory provisions nor received an official communication from the agency stating it would not permit activities for which

Plaintiffs specifically sought authorization, let alone a communication denying any Plaintiff a distilled spirits plant permit based on non-compliance with § 5178(a)(1)(B). Accordingly, Plaintiffs have failed to establish a concrete and particularized, actual or imminent injury resulting from the enforcement or operation of § 5178(a)(1)(B).

### B. Plaintiffs Have Not Proven an Injury in Fact Based on § 5601(a)(6).

As noted in Defendants' response, Def. Br. at 7, to establish an Article III injury based on threatened enforcement of a law, a plaintiff must demonstrate a serious intention to engage in a course of conduct "arguably affected with a constitutional interest" that is proscribed by a statute under which "there exists a credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt*, 442 U.S. at 298); *see Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011). Plaintiffs fail to show they satisfy this standard.

First, Plaintiffs point to no authority suggesting that the *conduct* in which they wish to engage—distilling spirits—is even arguably "affected with a constitutional interest." *Babbitt*, 441 U.S. at 298. Plaintiffs assert that "[p]re-enforcement review is not confined to narrow portions of the First, Second, or Fifth Amendments," Reply at 2, citing *Cochran v. SEC*, 20 F.4th 194, 199 (5th Cir. 2021). However, the Fifth Circuit there was not addressing the issue of standing, but rather the applicability of a jurisdiction-stripping statute in a challenge to SEC enforcement proceedings. 20 F.4th at 199-200.[2] Indeed, in holding that § 78y did not preclude the district court from hearing Cochran's claim, the Fifth Circuit expressly noted that "even if Congress did not divest jurisdiction, other doctrines, such as standing, ripeness, exhaustion, sovereign immunity, and abstention," might prevent district courts from hearing challenges like Cochran's. *Id.* at 211.

Second, Plaintiffs have not pointed to evidence of a credible threat of prosecution under § 5601(a)(6), the sole criminal provision at issue. As noted above, not only do the generic letter and press release sent to one individual Plaintiff a decade ago contain no threat of prosecution,

---

[2] Nor, for that matter, was the case a "pre-enforcement" scenario, as the SEC had already brought an enforcement action against Cochran, and she "filed suit in federal district court to enjoin the SEC's administrative enforcement proceedings against her." 20 F.4th at 198.

they also do not even mention § 5601(a)(6) or the premises restrictions for distilled spirits plants. *See supra* Part I. Plaintiffs present no evidence that the government has prosecuted individuals for violations of § 5601(a)(6), let alone that they personally face a "substantial risk of prosecution" under that statutory provision. *Paxton*, 2023 WL 4614124, at *3.

Third, and crucially, Plaintiffs have not proven a serious intention to engage in conduct proscribed by § 5601(a)(6). As the Fifth Circuit has emphasized, for a preenforcement challenge, a plaintiff cannot demonstrate a threat of imminent injury "[w]ithout concrete plans or any objective evidence to demonstrate a 'serious interest'" in violating the statute. *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008). A mere "desire to do something" proscribed by a statute does not suffice to establish a "substantial risk of prosecution," even if—unlike here—there is evidence that the government has prosecuted such conduct in the past. *Paxton*, 2023 WL 4614124, at *3. To distill spirits lawfully, Plaintiffs must not only comply with §§ 5178(a)(1)(B) and 5601(a)(6), but also apply for and obtain the necessary registrations and permits—something Plaintiffs have not even attempted to do. Thus, Plaintiffs' assertion that they "intend to engage in" certain distilling activities "as soon as they can do so lawfully," Reply at 1, is as vague and speculative as the "some-day" intentions held insufficient to establish an injury in fact in *Lujan*. 504 U.S. at 564. Further, because Plaintiffs appear to misunderstand the scope of the statutory premises restrictions for distilled spirits plants, *see supra* Part III.A, it is not clear that Plaintiffs even desire to engage in conduct proscribed by § 5601(a)(6). In sum, Plaintiffs have failed to show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" or injunctive relief. *Pollard v. Cockrell*, 578 F.2d 1002, 1006 (5th Cir. 1978).

IV. **Plaintiffs Fail To Show That Congress Lacked Authority To Enact the Challenged Provisions Under the Taxing Power.**

Plaintiffs do not challenge the constitutionality of the excise tax on distilled spirits, and as Plaintiffs admit, it is well within Congress's authority to enact reasonable provisions to protect the revenue raised from that excise tax. Reply at 4. The dicta Plaintiffs quote from *NFIB v. Sebelius*—

which address direct exercises of the Taxing Power and not the necessary and proper actions Congress may take to protect the revenue from a concededly lawful tax—are thus irrelevant. *See id.* at 3 (quoting 567 U.S. 519, 574 (2012)).[3] For the reasons set forth in Defendants' response brief, the two provisions at issue in this case are among the many reasonable steps Congress took to protect the substantial revenue raised from the excise tax on distilled spirits. Def. Br. at 11-16.

Plaintiffs identify no basis to question Congress's legitimate concern that locating distilled spirits plants on certain premises allows for easier concealment of stills and diversion of the substantial revenue from the distilled spirits excise tax, which is a first lien and attaches at creation. *See* 26 U.S.C. §§ 5001(b), 5004(a)(1); *see, e.g.*, Cong. Globe, 39th Cong., 1st Sess. 2839, 2841 (1866) (debate on the Revenue Act of July 12, 1866, which enacted some premises restrictions subsequently included in the Act of July 20, 1868). Nor do Plaintiffs demonstrate that Congress's decision to focus on dwelling houses—along with sheds, yards, and inclosures connected with dwelling houses; vessels and boats; and premises where beer and wine are produced—was unreasonable. Instead, Plaintiffs pose a rhetorical question about a hypothetical prohibition on locating a still on a "domiciliary parcel that is several miles from a home," Reply at 6—a restriction nowhere found in the statutory provisions at issue, or indeed, anywhere in the Internal Revenue Code, Federal Alcohol Administration ("FAA") Act, or TTB's implementing regulations. In other words, Plaintiffs' argument again rests on a misunderstanding of the law at issue and fails to address the distinct features of the taxing scheme for distilled spirits relevant to Congress's enactment of the challenged provisions. Because the location restrictions in §§ 5178(a)(1)(B) and 5601(a)(6) are reasonable measures to protect the revenue, they easily fall within the scope of Congress's authority to take actions necessary and proper to its execution of the Taxing Power.

---

[3] Plaintiffs' *NFIB* argument also proves too much: If Congress can do no more than compel payment or punish nonpayment of a tax, Reply at 3, then numerous tax code provisions, unchallenged by Plaintiffs, are outside the scope of Congress's taxing authority. With respect to distilled spirits, these include provisions such as registration requirements for stills and penalties for unauthorized production of distilled spirits, as well as other measures to protect the revenue that Plaintiffs appear to concede are well within Congress's powers. *See id.* at 4.

9

## V.    Plaintiffs Fail To Show That Congress Lacked Authority To Enact the Challenged Provisions Under the Commerce Clause.

Plaintiffs also fail to establish that Congress lacked authority to enact the challenged provisions under the Commerce Clause. Faced with the clear language of *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005) (cited in Def. Br. at 17), Plaintiffs attempt to confine *Raich*'s holding to the specific statutory scheme at issue in that case. Reply at 7. But the *Raich* Court nowhere suggested that Congress's authority under the Commerce Clause was rooted in the fact that the statute at issue "banned the interstate sale of marijuana," *id. Cf. Raich*, 545 U.S. at 17 ("Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."). Nor do Defendants' Commerce Clause arguments merely "shoehorn taxing power justifications into the boot of the general regulations supported by the Commerce Clause power." Reply at 8. Rather, as Defendants set forth and Plaintiffs do not dispute, distilled spirits are a multi-billion-dollar industry that substantially affects interstate commerce and is comprehensively regulated by Congress under both the Internal Revenue Code and the FAA Act. Def. Br. at 17-18. Congress enacted the provisions challenged in this case some 150 years ago in an "Act imposing Taxes on Distilled Spirits and Tobacco, and for other Purposes." ACT OF JULY 20, 1868, § 12, 15 Stat. 125, 130. However, as the Supreme Court has emphasized, "[t]he 'question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.'" *NFIB*, 567 U.S. at 570 (quoting *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 144 (1948)).

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' brief in support of its response to Plaintiffs' motion for preliminary injunction, the Court should deny Plaintiffs' motion, dismiss the case, and enter judgment for Defendants.

10

Dated: April 8, 2024	Respectfully submitted,

	BRIAN M. BOYNTON
	Principal Deputy Assistant Attorney General

	DIANE KELLEHER
	Assistant Branch Director, Federal Programs Branch

	/s/ *Elizabeth Tulis*
	ELIZABETH TULIS
	HANNAH SOLOMON-STRAUSS
	ANNA DEFFEBACH
	*Trial Attorneys*
	U.S. Department of Justice
	Civil Division, Federal Programs Branch
	1100 L Street, NW
	Washington, D.C. 20005
	(202) 514-9237
	elizabeth.tulis@usdoj.gov