# APPENDIX

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION

Hobby Distillers Association, Rick Morris,
Thomas O. Cowdrey III, Scott McNutt,
John Prince III

        Plaintiffs,

   v.

Alcohol and Tobacco Tax and Trade Bureau;
Department of Justice

        Defendants.

Case No. 4:23-cv-1221-O

**Declaration of Robert M. Angelo**

I, Robert M. Angelo, hereby declare and certify as follows:

1.  I have been an employee of the Alcohol and Tobacco Tax and Trade Bureau (TTB) and its predecessor agency, the Bureau of Alcohol, Tobacco, Firearms and Explosives, for 32 years. Currently, I am the Director of the Trade Investigations Division at the Office of Field Operations of TTB, United States Department of the Treasury.  The statements made herein are based on my personal knowledge and information obtained in my official capacity.

2.  On or about March 2014, TTB civil investigators, under my supervision, conducted a joint operation with special agents from the Florida Division of Alcoholic Beverages and Tobacco (DABT), targeting the illegal possession of stills and the illegal production of distilled spirits. The joint operation focused on individuals who may have been operating unregistered stills in order to put them on notice about the legal requirements for producing distilled spirits.  It did not specifically target potential violations of 26 U.S.C. § 5601(a)(6) nor were any federal charges filed.   The unlicensed possession of a still and unlicensed

production of distilled spirits in Florida are criminal offenses under provisions of Florida law that DABT enforces.  See, e.g., FLA. STAT. § 562.27.

3. TTB did not initiate any federal enforcement actions or criminal investigations in connection with the joint operation.

4. The joint operation involved identifying still purchasers in Florida and visiting the locations where the stills were received.  During the joint operation, DABT addressed situations involving the discovery of unlicensed stills or distilled spirits suspected of being illegally produced under state law, in accordance with DABT protocols and procedures.  As a result of the joint operation, DABT agents arrested 8 individuals for violations of state law and seized 46 stills.

5. In connection with the joint operation, TTB identified approximately 8,136 individuals who had purchased stills, using data contained in customer lists that TTB obtained from three large still manufacturers.  TTB then sent letters to individuals identified from the still manufacturers' customer listings.   The letters informed the still purchasers of the potential legal consequences associated with the illegal production of distilled spirits.[1]  TTB also enclosed with each letter a copy of a TTB press release, which had been posted to TTB's website, providing an overview of TTB's joint operation with the Florida DABT.  One of these letters, with attached copy of the TTB press release, was sent to Plaintiff Scott

---

[1] For example, the letter stated, "Unlawful production of distilled spirits is a criminal offense, punishable by a fine of up to $500,000 and/or imprisonment for not more than 5 years, and may result in the forfeiture of your real and personal property."  Although the criminal penalties in 26 U.S.C. § 5601, specifically related to distilling, rectifying, and distilled and rectified products, provide for a fine of up to $10,000 for each offense, there are other criminal provisions potentially applicable to unlawful production of distilled spirits that establish higher maximum fines. For example, the general criminal fine statute, 18 U.S.C. § 3571, provides for higher maximum fines than those specified in the statute of conviction, unless the convicting statute specifically exempts the offense from section 3571 applicability.  Section 3571(c)(3) provides for a $500,000 maximum fine for an organization convicted of a felony. In addition, 26 U.S.C. § 7201, which sets forth penalties for attempts to "evade or defeat any tax imposed by this title or the payment thereof," provides for a fine of up to $500,000 for a corporation.

McNutt. The first two pages of the Appendix to Plaintiffs' Reply appear to consist of this letter and press release. TTB did not pursue any enforcement action against Mr. McNutt associated with the activities identified in this letter and press release.

 

 

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 8th day of April 2024.

Robert M. Angelo

Digitally signed by
Robert M. Angelo
Date: 2024.04.08
10:07:32 -04'00'

_____

Robert M. Angelo
Director, Trade Investigations Division
Alcohol and Tobacco Tax and Trade Bureau
U.S. Department of the Treasury

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION**

Hobby Distillers Association, Rick Morris,
Thomas O. Cowdrey III, Scott McNutt,
John Prince III

         Plaintiffs,

   v.

Alcohol and Tobacco Tax and Trade Bureau;
Department of Justice

         Defendants.

Case No. 4:23-cv-1221-O

**Declaration of James C. Ebert**

I, James C. Ebert, hereby declare and certify as follows:

1. I have been an employee of the Alcohol and Tobacco Tax and Trade Bureau (TTB) for 17 years. Currently, I am the Deputy Assistant Administrator, Office of Permitting and Taxation of TTB, United States Department of the Treasury. The statements made herein are based on my personal knowledge and information obtained in my official capacity.

2. In my official capacity, I oversee TTB's Application Services Division and Call Center.

3. In my official capacity, I have access to TTB's Call Center records as well as records related to applications, registrations, and notices required by the Internal Revenue Code (IRC) and Federal Alcohol Administration Act (FAA Act) before engaging in certain activities involving the production or use of alcohol.

4.  To maintain these records, TTB uses secure electronic systems.

5.  TTB's Permits Online electronic system (PONL) allows applicants to upload documents and submit the information necessary to complete the required forms.

6.  I am familiar with PONL and have access to the records maintained by TTB in PONL and other TTB systems. As part of my duties as the Deputy Assistant Administrator, Office of Permitting and Taxation, I have had employees in my directorate conduct searches reasonably calculated to determine whether Scott McNutt submitted the materials required for an Alcohol Fuel Plant (AFP) registration.

7.  As a result of the aforementioned search TTB has determined that its records show Scott McNutt submitted a registration for an AFP on June 30, 2014 that was approved July 24, 2014. His AFP is still effective. TTB believes this is the AFP referenced in paragraphs 21 and 28 of Plaintiff's complaint.

8.  TTB's Call Center is reached by dialing 877-882-3277, and is the general phone number provided on TTB's website (TTBGov - Contact the National Revenue Center at TTB) for individuals or entities to call when they have a question related to TTB-regulated commodities. The types of inquiries that the Call Center receives generally include questions about permit applications and amendments, tax and compliance matters, and online systems help.

9.  TTB's Call Center is currently staffed by 11 Call Center Specialists. TTB's Call Center Specialists handled over 24,000 calls in calendar year 2023 covering a wide variety of inquiries.

10. Call Center Specialists attempt to resolve inquiries over the phone based on their general knowledge, but on occasion will need to research a topic or question to be able

to provide an answer to or otherwise assist a caller. Given the volume of calls received by the Call Center and limited number of staff, follow up research is only conducted when indicated as necessary. TTB also provides information on its website related to the permit application process, processing timelines, etc. https://www.ttb.gov/nrc/permits.

11. Call Center Specialists do not make final determinations or decisions regarding permit applications or tax matters.

12. TTB's Upstream Works for Finesse electronic call recording system (Upstream) allows Call Center Specialists track questions and requests they receive by maintaining various caller information including voice recordings of the calls themselves.

13. I am familiar with Upstream and have access to the records maintained by TTB in Upstream and other TTB systems. As part of my duties as Deputy Assistant Administrator, Office of Permitting and Taxation, I asked employees in my directorate to conduct searches reasonably calculated to determine whether Plaintiffs' counsel in this case contacted TTB through the Call Center on or around November 27, 2023.

14. As a result of the aforementioned search, TTB has determined that Plaintiffs' Counsel contacted the Call Center on November 27, 2023, and spoke to a staff-level Call Center Specialist regarding questions about permits to distill alcohol at home.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 8th day of April 2024.

James C. Ebert Jr.

Digitally signed by James C. Ebert Jr.
Date: 2024.04.08 10:51:08 -04'00'

James C. Ebert
Deputy Assistant Administrator
Office of Permitting and Taxation
Alcohol and Tobacco Tax and Trade Bureau
U.S. Department of the Treasury