UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Hobby Distillers Association, Rick Morris, Thomas O. Cowdrey III, Scott McNutt, John Prince III<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Alcohol and Tobacco Tax and Trade Bureau, a bureau of the U.S. Department of the Treasury; Department of Justice<br><br>　　　　Defendants. | Case No. 4:23-cv-1221-P |

**Plaintiffs' Supplemental Brief on the Applicability
and Scope of the Necessary and Proper Clause to the Taxing Power**

Devin Watkins (D.C. Bar # 155179)
Dan Greenberg (D.C. Bar # 9008067)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L St. NW, 7th Floor
Washington, D.C. 20005
(202) 331-1010
Devin.Watkins@cei.org
Dan.Greenberg@cei.org

GRIFFITH BARBEE PLLC
Casey Griffith (Texas Bar No. 24036687)
Casey.Griffith@griffithbarbee.com
Nicholas Kliewer (Texas Bar No. 24083315)
nick.kliewer@griffithbarbee.com
One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020| main
(214) 446-6021| fax

*Counsel for Plaintiffs*

**INTRODUCTION**

This case concerns the statutes that ban at-home distilleries and the limits of the federal government's power to ban them. Twelve years ago, the Supreme Court explained how to tell "whether Congress has properly exercised its taxing power." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 572 (2012) ("*NFIB*"). In describing the taxing power's proper exercise, the Court held that "the taxing power does not give Congress the same degree of control over individual behavior" as its power to regulate commerce. *Id.* at 573. The taxing power has limits: "By contrast [to the commerce power], Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." *Id.* at 574. The at-home distillery ban cannot be reconciled with *NFIB*'s directive: if the tax is properly paid, then the taxing power cannot justify the compulsion or the punishment of those who distill spirits at home. Although the logic above resolves the question before the Court, the Necessary and Proper Clause helps to illuminate and delineate the relevant boundaries of the federal government's authority.

The Necessary and Proper Clause constrains the federal government's powers. The Supreme Court's account of the Clause's operation has been consistent across centuries, from *McCulloch v. Maryland* to *NFIB*: namely, the Clause legitimizes the exercise of incidental authority to execute the Constitution's enumerated powers, but only if that exercise of authority is both necessary and proper. *McCulloch v. Maryland*, 17 U.S. 316 (1819). That exercise of incidental authority is *necessary* when it has an "appropriate" relation to some enumerated power, it is "plainly adapted" to that power, and "really calculated" to be useful for or conducive to implementing that power. *Id.* at 421, 423. It is *proper* only if the authority is genuinely incidental, not otherwise prohibited, and not itself a great substantive and independent power.

1

## ARGUMENT

"[T]he government of the United States is one of limited and enumerated powers." *Myers v. United States*, 272 U.S. 52, 183-84 (1926) (quoting Joseph Story, *Commentaries on the Constitution* § 426). Congress may "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." U.S. Const. art. I § 8, cl. 18. In *McCulloch v. Maryland*, the Supreme Court held that "[t]he power of creating a corporation, though appertaining to sovereignty, is not, like the power of making war, or levying taxes, or of regulating commerce, a great substantive and independent power, which cannot be implied as incidental to other powers, or used as a means of executing them." *Id.* at 409. (That is: Congress's power to create a national bank was not a "great substantive and independent" power; rather, Congress's power to create a national bank was an "incidental" power that was "used as a means of executing" a "great" power.) The Federalist Papers drew the same distinction between the "general powers" and the "particular powers," explaining that the particular powers are "the means of attaining the OBJECT of the general power." *The Federalist* No. 44, 1788 WL 458, at *3 (Jan. 25, 1788) (Madison).

Nearly two centuries later, the Supreme Court reaffirmed *McCulloch*'s distinction between great powers and incidental powers: "Although the [Necessary and Proper] Clause gives Congress authority to 'legislate on that vast mass of incidental powers which must be involved in the constitution,' it does not license the exercise of any 'great substantive and independent power[s]' beyond those specifically enumerated." *NFIB*, 567 U.S. at 559 (citing *McCulloch*).

A reasonably sophisticated Founding-era citizen would find *McCulloch*'s distinction to be commonplace, essentially because that distinction rested on that era's law of agency and such legal devices as the power of attorney and the corporate charter. The common law of agency had long distinguished between the "principal" powers given to an agent and the "incidental" powers that

were necessarily implied. *See, e.g.*, Robert G. Natelson, *The Legal Origins of the Necessary and Proper Clause*, in *The Origins of the Necessary and Proper Clause* 52, 60 (Gary Lawson et al. eds., 2010). The Clause's phraseology regularly recurs in the Founding era. *See e.g.,* George Washington, letter to Edmund Randolph (Mar. 18, 1784), https://shorturl.at/emtwP; *Howard v. Baillie*, 2 H. Bl. 618, 625; 126 Eng. Rept. 737, 741 (1796), https://shorturl.at/ivRX3. Justice Story, in his *Commentaries on the Law of Agency* (1839), wrote that "formal instruments of this sort are ordinarily subjected to a strict construction, and the authority is never extended beyond that, which given its terms, or is *necessary and proper* for carrying the authority into full effect." § 68 (citing *Atwood v. Munnings*, 108 Eng. Rep. 727 (KB 1827) (noting the great benefit of having an agent with the power "in cases of expediency as well as in cases of absolute necessity" and the phrase "as shall be necessary")).

An exercise of power under the Necessary and Proper Clause must be both "necessary" and "proper," because both of the Clause's requirements create separate constraints. Statutes that "undermine the structure of government established by the Constitution" are . . . not '*proper* [means] for carrying into Execution' Congress's enumerated powers." *NFIB*, 567 U.S. at 559*.* To determine what is *proper* under the Clause, it is of "fundamental importance" to examine "whether essential attributes of state sovereignty are compromised by the assertion of federal power." *Id.* at 560 (quoting *U.S. v. Comstock*, 560 U.S. 126 (2010) (Kennedy, J., concurring in judgment). A statute that violates state sovereignty is merely usurpation and is, as such, impermissible. *Printz v. United States*, 521 U.S. 898, 923–24 (1997) (citing *The Federalist* No. 33 (Hamilton)). Statutes are *necessary* when they are "'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise'" of some enumerated power. *NFIB,* 567 U.S. at 559.

3

I. **The At-Home Distilling Ban Is Not Proper Because Banning Local Activities Requires the Exercise of a "Great Substantive and Independent Power"**

Those who argue that the at-home distilling ban rests on the Constitution's taxing power face a difficulty: the constitutional impropriety of that ban becomes highlighted when the nature of that power is examined. As Alexander Hamilton wrote: "The propriety of a law, in a constitutional light, must always be determined by the nature of the powers upon which it is founded." *The Federalist* No. 33, 1788 WL 447, at *2 (1788) (Hamilton).

The *NFIB* opinion illustrates an inescapable limitation of the taxing power—a limitation entailed by the Necessary and Proper Clause: because the exercise of federal power may not compromise the essential attributes of state sovereignty, no court may ignore the constitutional limitation on the taxing power's "degree of control over individual behavior." 567 U.S. at 573. "[E]very tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed." *Id.* at 567. The taxing power can provide a monetary incentive for individuals to act in a given way. But in "contrast [to the commerce power], Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." *Id* at 574. The commerce power, on the other hand, allows Congress "simply [to] command individuals to do as it directs," imprison those who disobey, and subject them to "all the attendant consequences of being branded a criminal." *Id.* at 573. In short, the operation of the commerce power—unlike the operation of the tax power—allows the federal government to "bring its full weight to bear." *Id*.

*NFIB* emphasizes the limits of the taxing power largely because the power to ban local activities requires the exercise of a great substantive and independent power—and, without legitimate authority for such a power, the resultant violation of state sovereignty would be

4

impermissible. The power to ban local activities and thereby intrude upon the sovereignty of state governments must rest upon something greater than one of the incidental, lesser powers that the Founders implicitly assigned to the federal government. State authority under the police power allows a sovereign state to regulate or ban activities to protect the health, safety, morals, and general welfare of its inhabitants. If the federal government can ban purely local activities like at-home distilling, this implies a federal police power that can regulate just about anything. That impermissible implication leads to an important conclusion: "Shall at-home distilling be prohibited?" is a question that only the states, with their attendant police powers, may decide.

As suggested above, the Federalist Papers expressly rejected a similar pretextual claim of "interference with [federal] revenues" that would undermine the sovereign authority of the states:

> The propriety of a law, in a constitutional light, must always be determined by the nature of the powers upon which it is founded. . . . Suppose, again, that upon the pretense of an interference with its revenues, [the federal government] should undertake to abrogate a land tax imposed by the authority of a State; would it not be equally evident that this was an invasion of that concurrent jurisdiction in respect to this species of tax, which its Constitution plainly supposes to exist in the State governments?

*The Federalist* No. 33, 1788 WL 447, at *2 (Hamilton). Chief Justice John Marshall rejected a similar improper claim of federal tax authority under the Necessary and Proper Clause:

> Now I deny that a law prohibiting the state legislatures from imposing a land tax would be an "appropriate" means, or any means whatever, to be employed in collecting the tax of the United States. It is not an instrument to be so employed. It is not a means "plainly adapted," or "conducive to" the end. The passage of such an act would be an attempt on the part of Congress, "under the pretext of executing its powers, to pass laws for the accomplishment of objects not intrusted to the government."

John Marshall, *A Friend to the Union No. 2* (1819), *in John Marshall's Defense of McCulloch v. Maryland* (Gerald Gunther ed., 1969) (quoting *McCulloch*).

5

The government's argument that it can use the taxing power to ban activities even after all taxes are paid implies an astonishing and extraordinary expansion of the scope of federal power. *NFIB* anticipated that error when it warned that federal powers under the Constitution "must be read carefully to avoid creating a general federal authority akin to the police power." *Id*. at 567. Without such a careful constitutional reading, the federal government might be permitted to become something like a bigger state government, bristling with previously unidentified, unenumerated, and unlimited new powers that fully subsume the states' authority. In short, the government's argument implies that the federal government can, more or less, ban anything.

Here is the bottom line: if the taxing power is used to prohibit at-home distilling, it cannot be the *proper* use of the federal power that the Necessary and Proper Clause demands. The statute at issue directly commands individuals not to distill at home and threatens them with criminal punishments for disobeying. The at-home distilling ban is not a permissible incentive that discourages home distillery (that is, it doesn't just make home distilling more expensive by requiring a higher tax); rather, it is a command—and, crucially, a command that raises no revenue. Such commands may be exercised through the commerce power but not through the taxing power.

**II.    The At-Home Distilling Ban Is Not Necessary for Federal Taxation As It Is Not Appropriate, Plainly Adapted, or Really Calculated to Effect Federal Taxation**

Any exercise of government power under the Necessary and Proper Clause must not only be *proper;* it must also be "necessary . . . for carrying into Execution the foregoing Powers." U.S. Const. Art. I § 8 cl. 18. There is no requirement of absolute necessity or logical necessity here; rather, at a minimum, the *necessary* exercise of government power in this context must be closely connected and essentially related to an enumerated power, such that it is "convenient, or useful or conducive to the authority's beneficial exercise." *NFIB*, 567 U.S. at 559 (internal quotation marks omitted). Courts have explained the test of necessity in various ways, but those explanations have

6

always obeyed the key requirements of *McCulloch v. Maryland*, namely, a *necessary* exercise of federal power requires "means which are *appropriate,* which are *plainly adapted* to that end," and that are "*really calculated* to effect any of the objects intrusted to the government." 17 U.S. at 421, 423 (emphasis added).

The at-home distilling ban cannot be constitutionally *necessary* under the three requirements of the Clause—that is, the means are not (1) "appropriate," (2) "really calculated to protect federal revenue," or (3) "plainly adapted" to its end. The ban flunks that test.

**1.** To be *appropriate* for use under the Necessary and Proper Clause, the implied power must "have such a close and substantial relation to" the exercise of the federal power "that their control is essential or appropriate to protect that [power] from burdens and obstructions." *United States v. Lopez*, 514 U.S. 549, 555 (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937)).

At-home distilling does not create burdens upon or obstruct federal taxation; instead, it provides additional tax revenue. Wine and beer manufacturers, both of which are subject to a tax identical in all material respects to that of distilling, create their products at home without any burdens upon or obstructions to federal taxation. Home producers of wine and beer are just some of the millions of at-home businesses that are subject to all manner of taxes, but their existence does not create burdens or obstructions. Because there are no burdens or obstructions for federal taxation of at-home created beer and wine or other such at-home businesses, there is no reason to believe such burdens or obstructions exist for at-home distilling. Without such a burden or obstruction, it is not appropriate and therefore unnecessary to protect federal taxation.

**2.** Not only must the means of the implied power be appropriate, but those means must also actually improve—that is, they must be "really calculated" to effect—the ability of the federal

7

government to exercise its lawful authority. Even if the sort of implied power that is used might theoretically help implement the enumerated power, that isn't enough; rather, how the power is used must demonstrably accomplish its implementation.

In this case, the at-home distilling ban does not actually protect federal revenue. There are dozens of statutory requirements that already ensure that all taxes on distilled alcohol that would need to be paid by at-home distillers are actually paid in practice. For instance, the government may examine the still at any time, 26 U.S.C. § 5178(a)(2)(C)(ii); ensure that the still is sealed, § 5178(a)(2)(B), that appropriate gauges are used, § 5204, and that locks prevent unauthorized entry, § 5178(a)(2)(C)(ii); mandate details of distillery construction to prevent hiding spirits, § 5178(a)(1)(A); and require numerous reports of how much was produced and stored, § 5207, which are all signed under penalty of perjury, 27 C.F.R. § 19.45. If any of these numerous requirements is violated, then the bond that is required ensures that federal taxation cannot be harmed by at-home distilling, as any such harm could be recovered against the bond. 26 U.S.C. § 5173.

In the context of this heap of regulations, the force of the Necessary and Proper Clause is that, to prevail, the government must show that the at-home distilling ban adds something real to the protection of revenue that has not already been protected against. It has not done so.

**3.** The implied power needs to be "plainly adapted" to the federal power. This requires an "obvious, simple, and direct relation" between the power implied by the statute and the enumerated federal power. *Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring). In that opinion, Justice Thomas cited Madison's cautionary warning about "a latitude in expounding the Constitution"; Madison argued that this latitude "seems to break down the landmarks intended by a specification of the powers of Congress; and to substitute for a definite connection between means and ends, a legislative discretion as to the former, to which no practical limit can be

8

assigned." James Madison, letter to Spencer Roane (Sept. 2, 1819). The federal government having "its general object, the national welfare, every thing is related immediately or remotely to every other thing; and consequently, a power over any one thing, if not limited by some obvious & precise affinity, may amount to a power over every other." *Id.*

The problem of an insufficiently direct relationship between an asserted implied power and the enumerated power upon which it relies famously arose in *United States v. Lopez*, 514 U.S. 549 (1995), when the federal government argued that prohibiting guns near schools fell under the regulation of interstate commerce. The government claimed that the effects of violent crime throughout society are substantial and that its costs are spread to everyone through insurance. The Supreme Court rejected that claim because the gun prohibition was not sufficiently plainly adapted to federal commerce. Although it is true, as Madison noted, that in some respects "every thing [is] related immediately or remotely to every other thing," it would be improper for any court to "pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567. In other words, the government failed to meet Madison's requirement of "obvious & precise affinity" between the implied power asserted and the enumerated power.

Our previous briefing shows that the at-home distilling ban lacks an obvious and direct connection to federal taxation. At-home distilling is permitted, while at-home beverage distilling is banned. Beverage distilling near a house but on a separate parcel is permitted; beverage distilling that is just as near to a house and on the same parcel is banned. These distinctions demonstrate that the ban is essentially irrelevant to federal taxation, and so it therefore lacks the kind of direct connection to federal power that *Lopez* requires.

9

## CONCLUSION

Respect for *NFIB's* directives—that "the taxing power does not give Congress the same degree of control over individual behavior" and that if the relevant "tax is properly paid, the Government has no power to compel or punish individuals subject to it"—require this Court to find that the at-home distilling ban is not a *proper* exercise of the taxing power. *NFIB*, 567 U.S. at 573. Furthermore, if this Court examines whether the taxing power is *necessary* under the Clause, it should find that the at-home distilling ban is not necessary to collect federal taxes. That is because the ban flunks the constitutional requirements of necessity. It is not *appropriate*, as shown by the fact that taxes are levied without obstruction on the at-home production of beer, wine, and millions of other products. Furthermore, the ban is not *really calculated* to help federal taxation because a multitude of other statutory provisions demonstrably ensure that all appropriate taxes will be paid. Finally, the ban is not *plainly adapted* to protect federal taxation, as demonstrated by the fact that, for instance, at-home fuel manufacture is allowed while at-home beverage manufacture is disallowed, a fact that itself demonstrates the absence of the direct connection between the implied power that the statute would exercise and the enumerated power it ultimately must rely upon.

Dated: May 17, 2024                                         Respectfully submitted.

**GRIFFITH BARBEE PLLC**                         */s/ Devin Watkins*
Casey Griffith (Texas Bar No. 24036687)          Devin Watkins (D.C. Bar # 155179)
Casey.Griffith@griffithbarbee.com                Dan Greenberg (D.C. Bar # 9008067)
Nicholas Kliewer (Texas Bar No. 24083315)        COMPETITIVE ENTERPRISE INSTITUTE
Nick.Kliewer@griffithbarbee.com                  1310 L St. NW, 7th Floor
One Arts Plaza                                   Washington, D.C. 20005
1722 Routh St., Ste. 710                         (202) 331-1010
Dallas, Texas 75201                              Devin.Watkins@cei.org
(214) 446-6020| main                             Dan.Greenberg@cei.org
(214) 446-6021| fax

*Counsel for Plaintiffs*